CHARLES H. ERMENTROUT and Another v. GIRARD FIRE & MARINE INSURANCE COMPANY OF PHILADELPHIA.[1]

December 24, 1895.

Nos. 9636—(285).

| 63 | 305 |
| s30LRA | 346 |
| 108Wis | 496 |
| 52LRA956n | |
| 63 | 305 |
| 82 | 339 |

**Insurance—Loss "Direct Result" of Fire.**

> Action on a policy insuring plaintiffs on their building "against all direct loss or damage by fire." The policy further provided that, if the building fell, "except as a result of fire," the insurance on the building should immediately cease.  There was evidence tending to prove that a building adjacent to the one insured, the wall between them being a partition wall, caught fire, and was partially consumed, and as the direct result of such fire fell, carrying down with it the partition wall and a part of the insured building.  *Held* that, if such were the facts, the fall of the insured building was "the result of fire," and "a direct loss or damage by fire," although no part of it ignited or was consumed by fire.

[1] Reported in 65 N. W. 635.

**Same.**

The word "direct," in the policy, construed as meaning "immediate," or "proximate," as distinguished from "remote."

**Notice of Loss.**

The policy provided that, "if fire occur, the insured shall give immediate notice of any loss thereby in writing to this company." *Held*, that a failure to give such notice for nearly 60 days after the fire constituted, as a matter of law, a breach of this provision.

**Same—Local Agent.**

The local agents of the insurance company who issued the policy had authority to accept applications for insurance, to fix the rate of insurance, fill up, countersign, and issue the policies (which they received from the company, signed by its general officers), and collect the premiums. There was no evidence that they were clothed with any apparent authority other or greater than their actual authority. *Held*, that it was not within the scope of their authority to accept or waive notice of loss,—following former decisions.

**Waiver of Failure to give Notice.**

After the policy was dead, and all liability on it had ceased by reason of plaintiffs' failure to give notice of loss, they transmitted proofs of loss to the general managers of the company, who retained the proofs, but notified the plaintiffs that they "denied any liability under the policy on the part of the company." *Held* no waiver of plaintiffs' failure to give notice of loss.

Appeal by plaintiffs from an order of the district court for Hennepin county, Belden, J., denying a motion for a new trial. Affirmed.

*Merrick & Merrick*, for appellants.

*Kueffner, Fauntleroy & Rice* and *Freeman P. Lane*, for respondent.

MITCHELL, J. This action was brought on a policy issued by the defendant to the plaintiff Ermentrout, insuring him, to the amount of $1,000, for one year "against all direct loss or damage by fire," on his "brick, iron-roof, grain warehouse building, and bins therein, including foundations and all permanent fixtures," etc. The only other provisions of the policy involved on this appeal are as follows: "If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." "If fire occur, the insured shall give immediate notice of any loss thereby in writing to this com-

pany." "The sum for which this company is liable, pursuant to this policy, shall be payable 60 days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company, in accordance with the terms of this policy."

When the plaintiffs rested, the defendant moved to dismiss the action, for the reason that plaintiffs had failed to establish their cause of action, in that—First, it did not appear that the loss or damage was the direct result of fire; second, that it did appear that the plaintiffs had not given immediate notice of the loss in writing to the company. The judge granted the motion, although placing his decision exclusively on the last ground. Of course, if the action should have been dismissed on either ground, the ruling of the court must be affirmed.

1. The insured building was adjacent to another used as a feed mill, the wall between them being a partition wall. There is no claim that any part of the insured building was actually ignited or consumed by fire. The fire was confined to the adjacent feed mill, which fell, carrying down with it the partition wall and a part of the elevator insured, and the question to which both the examination and cross-examination of plaintiff's witnesses seem to have been directed was whether the fall caused the fire or the fire caused the fall. While the evidence offered by plaintiff was not of the most convincing or satisfactory character, yet we think it was such that the jury might have found either way on the question. We think that, as the evidence stood when plaintiff rested, it would have justified the jury in finding that the feed mill had caught fire before it fell, and that the fall was caused by the partial consumption of the feed mill, and the weakening of the partition wall by the fire. If such were the facts, then we think the falling of the insured building was a "direct loss or damage by fire," within the meaning of the policy.

The provision that, if the building fell, "except as the result of fire," the insurance thereon shall cease, was introduced into the policy by the insurer for its own benefit, and, under a familiar rule, must be construed, in case of ambiguity, most strongly against it. We think it has reference only to cases where the building might fall from some other cause than fire,—as, for example, defective construction, the withdrawal of necessary support, storm, flood, or other

like cause,—and fire thereafter ensued. But it was not intended to exclude cases where fire was the immediate or proximate cause of the fall. To render the fire the immediate or proximate cause of the loss or damage, it is not necessary that any part of the insured property actually ignited or was consumed by fire. This is so well settled that the citation of authorities in support of the proposition is unnecessary.

The question is, was fire the efficient and proximate cause of the loss or damage? Thus, in one case, where a house protected by a policy of insurance against damage by fire was injured by the falling of part of the wall of an adjacent house, in consequence of fire in the latter house, it was held that the fire was the proximate cause of the loss, and that the insurers were liable, although the house insured had never been on fire. Johnston v. West of Scotland Ins. Co., 7 Shaw & D. Scot. Ct. Sess. 52. The word "direct," in the policy, means merely "immediate," or "proximate," as distinguished from "remote." Counsel for defendant cites, in support of a contrary view, some language used by way of illustration in California Ins. Co. v. Union Compress Co., 133 U. S. 387, 416, 10 Sup. Ct. 365, 372, in which the court names "destruction through the falling of burning walls" as an instance of remoteness of agency. The question was not before the court, for in that case the insured property was physically burned by the direct action of fire. If the court meant what counsel claims, we cannot avoid the conclusion that the illustration was, to say the least of it, an unfortunate one.

2. Seeley & Co., who issued the policy, were the local agents of the defendant, with authority "to receive proposals for insurance * * * within the county of Hennepin, and to receive premiums thereon, and to give receipts and issue policies therefor." It also appeared that these agents had authority to accept applications for insurance, fix the premium or rate of insurance, and fill up, countersign, and issue policies thereon, which they received from the company, signed by its president and secretary. So far as appeared from the evidence, this was the extent of their actual authority, and there was no evidence tending to show that their apparent authority was other or greater than their actual authority. The only evidence of the giving of notice of loss, except the sending of proofs of loss to the general managers of the defendant at

Chicago on or after October 9 (received by them on or about Ocber 23), was to the effect that, within a day or two after the loss, one of the plaintiffs verbally notified Seeley & Co. that "the fire had destroyed the building." Although probably not material, it does not appear that he requested Seeley & Co. to give or forward the notice to the company, or that they promised to do so, or made any reply to the plaintiff. As the loss occurred on August 12, it is clear, under the authorities, that, as a matter of law, the time for giving notice of loss had expired before the proofs of loss were sent to Chicago. It is also settled law that, where the policy requires notice of loss to be given to the insurer within a specified time, such notice is a condition precedent to the right of action on the policy. Hence, for their right of recovery on the policy, the plaintiffs have to rely on the verbal notice given to Seeley & Co.

If Seeley & Co. were the proper parties to whom to give this notice,—in other words, if it was within the scope of their authority to receive notice of loss,—we would not feel any doubt but that if, when they received verbal notice, they made no objection to its form, they would be deemed to have waived the omission to give it in writing. But it is self-evident that if they had no authority to receive such notice, then they could waive nothing in the matter. Upon this state of facts, it was not within the scope of the authority of Seeley & Co. to receive or waive notice of loss, and hence notice to them was not notice to the company. Even if there could be any doubt of the correctness of this proposition as a new question, it has been too long and too well settled in this state to be now considered open. Bowlin v. Hekla F. Ins. Co., 36 Minn. 433, 31 N. W. 859; Shapiro v. Western Home Ins. Co., 51 Minn. 239, 53 N. W. 463; Shapiro v. St. Paul F. & M. Ins. Co., 61 Minn. 135, 63 N. W. 614. But we think the rule is correct upon both principle and authority. It is in accordance with the general principles of the law of agency. It is elementary that a principal is only liable for acts done by his agent within the scope of the authority, actual or apparent, with which the principal has clothed him; that it rests entirely with the principal to determine the extent of the authority which he will give to his agent; also, that every person dealing with an assumed agent is bound, at his peril, to ascertain the nature and extent of the agent's authority.

In insurance cases courts frequently inaccurately classify agents as "local" and "general." But the extent of the territory which is to be the field of his agency is no test of the extent of an agent's authority within that field. His field of operations may include the whole United States, and yet his powers be special and limited. On the other hand, his field of operations may be confined to a single county or city, and yet his authority within that field be unlimited. In the present case there is no question of apparent, as distinguished from actual, authority. The question is simply one of actual authority, expressed or implied. Authority to act in the matter of a loss under the policy, after it has occurred, is not expressly given. All the authority expressed relates to the making of the contract of insurance. It is a fundamental principle in the law of agency that a delegation of power, unless its extent be otherwise expressly limited, carries with it, as a necessary incident, the power to do all those things which are reasonably necessary to carry into effect the main power expressly conferred. But it is equally fundamental that the power implied shall not be greater than that fairly and legitimately warranted by the facts; in other words, an implied agency is not to be extended by construction beyond the obvious purpose for which the agency was created. We do not think that mere authority to make a contract of insurance carries with it implied authority to act in the matter of a loss under the policy after it has occurred. If the implied authority extends to accepting notice of the loss, it would logically follow that it also extends to proof of loss, and even to the adjustment of the loss,— a length to which no court has ever gone. The rule which we have adopted is also in accordance with the general current of the authorities. Lohnes v. Insurance Co., 121 Mass. 439; Smith v. Niagara F. Ins. Co., 60 Vt. 682, 15 Atl. 353; Bush v. Westchester F. Ins. Co., 63 N. Y. 531.

Occasional statements in some of the text-books seem to announce a different rule, but they are not borne out by the authorities cited in their support. For example, in Wood, Ins. § 419, it is stated that, "where an agent is intrusted with policies signed in blank, and is authorized to issue them upon the application of parties seeking insurance, he is thereby clothed with apparent authority to bind the party in reference to any condition of the contract, whether pre-

cedent or subsequent, and may waive notice or proofs of loss, and may bind the company by his admissions in respect thereto." Upon an examination of the large number of authorities cited in support of the text, it will be found that not one of them tends to support the author's proposition as to proofs of loss, unless it be the nisi prius decision in Ide v. Phœnix Ins. Co., 2 Biss. 333, Fed. Cas. No. 7,001, in which the question is not discussed, no authorities are cited, and the statement of facts is so meager that it cannot be ascertained what the evidence was as to the actual or apparent authority of the agent. Most, if not all, of the other cases may be classified as follows: First. Cases holding that, where an agent is authorized to make the contract of insurance and issue the policy, the company is bound by his acts, representations, or omissions preceding or accompanying the issuing of the policy. Considered as the statement of a general rule, this is the doctrine of all courts. Second. Cases holding that authority to make the original contract of insurance carries with it implied authority to modify or waive any of its conditions while the contract is still current, as by consenting to other insurance, change of risk, etc. This court has adopted this general rule, although some courts do not go that far. Third. Cases where the agent had, with the knowledge of the company, been in the habit of receiving notices of loss, proofs of loss, and adjusting losses, and it had thereby clothed him with apparent authority to do these things. Fourth. Cases where the authority of the agent to do the particular acts was admitted, or not disputed, and the only question was as to the effect of his acts, as, for example, whether they constituted a waiver.

3. When the general managers received the proofs of loss in October, they wrote to plaintiffs, stating that they were in receipt of papers purporting to be proofs of loss, but adding: "This is to notify you that we deny any liability under said policy on the part of this company." They did not, however, return the proofs of loss.

If the question was one of the sufficiency of the proofs of loss, we have no doubt the conduct of the general managers would have amounted to a waiver of any defect in them, either of form or substance. But this did not amount to any waiver of the prior failure of the plaintiffs to give notice of loss as required by the terms of the policy. It will be observed that by reason of this prior failure the

policy was already dead when the proofs of loss were received; also, that in this letter the general managers did not place their denial of liability on any particular ground, but denied all liability generally. What would have been the effect, under the circumstances, of placing their denial of liability upon some specific ground other than the failure to give notice of loss we need not inquire. But there was nothing in the language or conduct of the general managers that could be construed as a waiver of plaintiffs' prior failure to give notice of the loss, by reason of which the policy was already dead. If the policy had been still alive, and the plaintiff still had time within which to give the notice, or to supply defects in one already given, a different question would be presented, and many of the numerous cases cited by plaintiffs' counsel would have been in point.

Our conclusion is that the court was right in dismissing the action, on the ground that plaintiffs had failed to give notice of loss as required by the policy.

Order affirmed.

CANTY, J. I concur in the first division of the foregoing opinion, but not in the second. I am of the opinion that an insurance agent who has authority "to receive proposals for insurance," "receive premiums thereon," "fix the premiums or rate of insurance," and "fill up, countersign, and issue policies of insurance," should be presumed to have authority to receive notice of loss, at least when no higher local authority appears to exist. Especially is this true of the highest local representative of an insurance company in so large and populous a county as Hennepin.

It is a matter of common knowledge that every insurance company depends largely (though perhaps not exclusively) on such agents to furnish it information concerning such losses. Every company doing a considerable amount of business in any locality, especially in a commercial center of any size, must have and always does have the assistance of its local agent in ascertaining the facts concerning the loss, just as much as they have his assistance in obtaining business or determining the character of risks. It is true that an adjuster is often and quite usually sent to examine into the facts and adjust the loss, but it is almost the invariable custom for the local agent to furnish the company all the facts within his knowledge, and all the

facts which he can ascertain, immediately after he learns of the loss, and usually long before the adjuster comes upon the ground.   Of course most of this information from the agent to the company is secret and confidential, but it is none the less within the scope of the agent's duties to furnish it.   These are things that everybody knows, and what everybody knows the courts should not refuse to know.   These are duties which such agents usually perform.   It should be presumed that such duties are within the scope of their authority, and if so it should be presumed that they have authority to receive information of such a loss from the insured and transmit it to the company, and that when such information is so received it is their duty so to transmit it.

As far as concerns the authority of such agents generally, there is no clear or well-defined line drawn between matters arising in connection with or accompanying the making of the policy and other matters, except as that line is being drawn by some of the courts. The line which the companies themselves have always drawn is the line between the right to receive and retain premiums and the right to refuse to pay losses.   They always admit that their agents have authority to receive such premiums, and always deny that these agents have any authority to waive any forfeiture whatever, whether arising before or after loss, whether arising in connection with the issuing of the policy or in connection with the giving notice of loss.

I am of the opinion that notice to the local agent was sufficient notice of loss, and that the retention by the company of the proof of loss subsequently sent it, tended to prove waiver of prior conditions, as well as performance of the condition requiring such proof of loss.