THE HARTFORD FIRE INSURANCE COMPANY, A CORPORATION UNDER THE LAWS OF THE STATE OF CONNECTICUT, *Plaintiff in Error,* v. IDA H. REDDING AND HER HUSBAND, JOSEPH H. REDDING, *Defendants in Error.*

1. Chapter 4173, act approved June 3, 1893, which authorizes the recovery of attorneys' fees in certain cases against insurance companies is constitutional.

2. The attorneys' fees provided for by chap. 4173, act approved June 3, 1893, may under the second section of that act be recovered in the same suit and included in the same judgment as the amount due upon the policy of insurance.

3. Chapter 4173, act approved June 3, 1893, which authorizes the recovery of attorneys' fees in certain cases against insurance companies, was not repealed by chapter 4677, act approved May 31, 1899.

4. Chapter 4677, act approved May 31, 1899, does not deprive the insurer of the right to plead that the fire was caused by the criminal conduct of the insured, or that the insurable value thereby required to be fixed and written in the policy was procured to be so fixed by fraud on the part of the assured.

5. Chapter 4677, act approved May 31, 1899, is not repugnant to the constitution of this State nor to that of the United States.

6. Leave to amend a pleading may be granted during a term of court without notice to the opposite party of the application therefor, even though the cause has been submitted upon demurrer by brief at such term.

7. Where an amendment of the declaration is permitted, pending the hearing of a demurrer thereto, the court should permit the defendant to plead or demur to the amended declaration, and it

will be error for the court to apply the demurrer on file to the amended declaration, without defendant's consent.

8. Errors without injury are not ground for reversal.

9. The requirements in the standard insurance policy that the insured shall give notice of loss and make proofs of loss, are conditions precedent to the right to sue, but a failure to give the notice or to make the proofs· within the time stipulated will not invalidate the policy or work a forfeiture of the rights of the insured in the absence of a stipulation to that effect, but will merely postpone the day of payment where such notice is given and proofs of loss made within such time as will enable the insured to bring his suit within the time limited by the policy.

10. Where proofs of loss required to be made and served upon the company by the policy are sufficiently full to give the .company notice of the loss required by another provision in the policy, the same document will be sufficient as a notice of the loss as well as proofs of loss.

11. Proofs of loss served upon an insurance company signed and sworn to by the insured stating that the fire occurred at a stated hour on a day named; that it originated in the roof or attic of the building, but how it originated or the cause thereof, was to the insured entirely unknown; that the fire did not originate by any act, design or procurement on the part of the insured or in consequence of any fraud or evil practice done or suffered by the insured, and that any other information required by the company would be furnished on request, substantially comply with a provision in the policy requiring the proofs of loss to state the knowledge and belief of the insured as to the time and origin of the fire, particularly as the company requested no further information from the insured.

12. Trial courts have power to permit parties to withdraw from written stipulations waiving a jury and submitting the cause upon an agreed statement of facts to the court. The exercise of such power rests in discretion and it is properly exercised where the application is made before the court has decided the cause under the written submission and the party applying has discovered other pertinent facts since the submission was entered into which the other party declines to embrace in the agreed statement. The fact that by the exercise of due diligence the omitted facts might have been discovered before the submission was entered into does not deprive the court of the power to grant the application to withdraw.

13. Under section 1059, Rev. Stats. of 1892, a plaintiff may file more than one replication or subsequent pleading to any pleading of the defendant if he so desires.

14. Where at the time a policy of insurance is written other insurance exists upon the same property, and the fact is known to the agent who communicates it to the company, and the company accepts the premium and does not deny the validity of its policy on account of such other insurance until after a loss occurs, the company is liable though its consent for such other insurance was not endorsed upon the policy as required by its terms.  Such conduct on its part amounts to a waiver of the provision requiring written consent for other insurance, and the waiver will apply not only to the other insurance as it existed when its policy was written, but to any policy subsequently issued in lieu or renewal of such other insurance.

This case was decided by Division B.

Writ of error to the Circuit Court for Jefferson county.

The facts in the case are stated in the opinion of the court.

*A. W. Cockrell & Son* for plaintiff in error.

*T. L. Clarke* for defendants in error.

CARTER, P. J.—This writ of error is taken from a judgment in favor of defendants in error rendered by the Circuit Court of Jefferson county, in an action against plaintiff in error, upon a fire insurance policy.  The policy in form is substantially the same as that set forth in the statement of facts in the case of *Indian River State Bank v. Hartford Fire Insurance Company*, 46 Fla. 283, 35 South. Rep. 228, except as hereinafter stated.  It is dated October 14, 1899, and purports to insure Ida H. Redding for the term of one year from October 15th, 1899, "against all direct loss or damage by fire except as hereinafter provided to an amount not exceeding fifteen hundred dollars" to the building therein specifically described.  It contains

an endorsement: "The insurable value of the building herein described is fixed at $3,000," purporting to have been made "to comply with the act of the legislature of the State of Florida regulating the issue of policies by fire insurance companies approved May 31, 1899."

The declaration as originally drawn alleges the making of the policy, the payment of the premium, and the ownership of the property by Ida H. Redding at the time the policy was issued, and at the time of the fire. It alleges that by the policy the defendant "did insure the plaintiff Ida H. Redding for the term of one year from the said 15th day of October, A. D. 1899, at noon, to the 15th day of October, A. D. 1900, at noon, against all loss or damage by fire except as therein provided to an amount not exceeding the sum of fifteen hundred dollars" on a certain building, describing it; that "in and by its said policy the said defendant, the Hartford Fire Insurance Company, did promise and agree to pay to the plaintiff Ida H. Redding all such loss or damage as might occur to said building by fire during the period of such insurance aforesaid not exceeding the said sum of fifteen hundred dollars, sixty days after notice and proof of such loss or damage furnished to the said defendant company;" that "on the 21st day of August, A. D. 1900, and while the said policy of insurance was in full force and effect, the aforesaid building was totally and entirely lost and destroyed by fire, of which loss and destruction the said defendant had due notice," and that "the plaintiff Ida H. Redding has rendered to the said defendant company a particular account and proof of said loss more than sixty days prior to the commencement of this action, and has otherwise fully complied on her part with all the conditions of said contract of insurance." It further alleges that the cash value of the building was $4,000, at the time of the loss; that Ida H. Redding actually sustained loss to said amount; that the total insurance on the building was $3,000, consisting of the policy in suit "and a like policy of insurance for the sum of fifteen hun-

dred dollars issued to the plaintiff Ida H. Redding on the said building by the Home Insurance Company of New York City, at its Monticello, Florida, agency, numbered 328, dated April 18th, 1900, and expiring April 18th, A. D. 1901, of all which the defendant had due notice and proof."

There are other allegations in the declaration which need not be noticed further than to say that attorneys' fees were claimed under the statute hereafter referred to. The policy was attached to and made a part of the declaration.

The defendant filed its motion to strike those allegations of the declaration claiming attorneys' fees upon the grounds: 1. There is no law authorizing such recovery.

2. There is no law which required defendant to pay attorneys' fees before suit brought and prosecuted.

3. There is no law authorizing plaintiff to demand such fees before suit brought and prosecuted, consequently there can be no failure to pay on which to predicate a demand and refusal. This motion was overruled, and the ruling is assigned as error.

The court at the trial instructed the jury to find for the plaintiff an additional sum as attorneys' fees to be fixed at such reasonable amount as was shown by the evidence. This instruction was excepted to and is also assigned as error.

The recovery of attorneys' fees in cases of this character is authorized by chapter 4173, act approved June 3rd, 1893. It is contended that the statute is unconstitutional, but this court held otherwise in *Tillis v. Liverpool & London & Globe Insurance Co.*, 46 Fla. 268, 35 South. Rep. 171, and we adhere to that decision. The second section of the statute provides that "the amount to be recovered for fees and compensation for attorneys and solicitors against life and fire insurance companies as provided in the foregoing section, shall be ascertained and fixed by the court in chancery causes, or a jury in common law actions, from testimony adduced for that purpose, and shall be included in the judg-

ment or decree rendered against such companies." This language shows very clearly that the legislature intended to authorize the plaintiff in actions upon life and fire insurance policies to recover and have included in one and the same judgment the amount due upon the policy and the attorneys' fees, and there is consequently no impropriety in claiming attorneys' fees by the declaration which seeks to recover upon the policy.

It is further contended that the statute was repealed by chap. 4677, approved May 31, 1899, entitled "an act to regulate contracts of insurance of buildings and structures in this State, to fix a measure of damage in case of loss, and to prescribe a rule of evidence therein" which reads as follows: "Section 1. That from and after the passage of this act any individual, firm, corporation or association insuring any building or structure in this State against loss or damage by fire or lightning, shall cause such building or structure to be examined by an agent of the insurer and full description thereof to be made, and the insurable value thereof to be fixed by such agent and written in the policy; in the absence of any change increasing the risk without the consent of the insurers, in case of total loss the whole amount mentioned in the policy upon which the insurers receive a premium shall be paid, and in case of partial loss the full amount of the partial loss shall be paid, but in no case shall the insurer be required to pay more than the amount upon which a premium is paid.

Sec. 2. In case of the total loss of the property insured the measure of damage shall be the amount upon which the insured paid a premium, and, in case of partial loss, the measure of damage shall be such part of the amount upon which premiums are paid as the damage sustained is part of the insurable value of the building or structure as fixed by the agent of the insurer, and the insurers shall be estopped from denying that the property insured was worth at the time of insuring the amount of the insurable value as fixed by the agent.

Sec. 3. Any person who solicits insurance and procures applications therefor shall be held to be the agent of the party issuing a policy upon such application, anything in the application or policy to the contrary notwithstanding.

Sec. 4. That the defendant in any action brought upon a policy, or contract of insurance, hereafter made, or renewed, insuring any building or structure in this State, against loss or damage by fire or lightning, shall not be permitted to defend against such action, by setting up any claim, or provision of such policy, or contract of insurance, as avoiding the provisions, or any of them, of this act; and it shall be the duty of the court on motion of the plaintiff, or on its own motion, to strike out any plea setting up such defense."

A question very similar to the one here presented was considered in *Florida East Coast Railway Company v. Hazel,* 43 Fla. 263, 31 South. Rep. 272, and it was held that the latter statute did not repeal the former. There is no necessary inconsistency between the two statutes we are now considering, and upon the authority of the decision in that case we hold that the act of 1893 was not repealed by the act of 1899. The motion to strike was properly denied. The instruction complained of is correct.

In this connection we will consider the contention made that the act of 1899 is unconstitutional. It is argued that properly construed the statute denies the right of the insurer to plead that the fire was caused by the criminal conduct of the insured; that the insured by fraud procured or induced the insurer to fix the insurable value at an excessive amount, and that the property depreciated in value between the date of the policy and the loss. The contention as we understand it is that the statute confines the insurer's defenses to four only, *viz*: that the contract was never in fact executed; that the loss set up never in fact occurred; that the loss was not due to fire or lightning; that the property insured was not in fact a building or structure in the State of Florida.

The statute requires the insurer to fix the insurable value of the building and to specify such value in the policy and the measure of damages in case of a total loss is fixed at the amount mentioned in the policy upon which a premium is paid.  The statute does not undertake to deprive the insurer of any proper defense it may have to an action upon the policy except in respect to the measure of damages and the authority of certain agents.  Its principal object and purpose is to fix the measure of damages in case of loss total or partial, and to this end it requires the insurer to ascertain the insurable value at the time of writing the policy, and to write it therein.  Its provisions do affect the 3-4 value and arbitration clauses as well as other clauses contained in the policy, but there is nothing in its language that will justify us in holding that it deprives the insurer of the right to plead that the fire was caused by the criminal conduct of the assured, or that the insurable value was procured to be fixed by fraud on his part. Whether the statute properly construed deprives the insurer of the right to show that the property depreciated in value between the time the policy was issued and the loss, we do not find it necessary to determine in this case as there is no claim that the property insured by this policy had so depreciated, but if the statute does deprive the insurer of that right, it will not be unconstiutional for that reason.  In fixing the insurable value the insurer can consider depreciation as an element, and protect itself against ordinary depreciation in that way.  Without further discussion of the quesion it is sufficient to say that the provisions of this statute are not contrary to the constitution of this State or of the United States.  *Orient Ins. Co. of Hartford, Conn., v. Daggs,* 172 U. S. 557, 19 Sup. Ct. Rep. 281; *Hancock Mutual Life Ins. Co. v. Warren,* 181 U. S. 73, — Sup. Ct. Rep. —.  See, also, *Farmers' and Merchants' Ins. Co. v. Dobney,* 189 U. S. 301, — Sup. Ct. Rep. —.

The defendant filed its demurrer to the original declaration, and the demurrer came on for hearing during a term

of the court. The order on demurrer recites that "this action having been submitted on brief of counsel for the respective parties on the demurrer of defendant to plaintiffs' declaration, and the plaintiffs having with leave of the court amended their said declaration by striking out the word "otherwise" in line 20 from top of second page of said declaration, and by inserting after the word proof in line 4 from top of third page of said declaration the words "and made no objection to such additional insurance," thereupon upon consideration of the same, it is considered and ordered that the said demurrer of the defendant to the complainants declaration be and the same is hereby overruled, and the defendant is granted leave until the first Monday in January, A. D. 1902, to plead over to said declaration." Several assignments of error are based upon this order which we will now discuss.

It is first insisted that the court erred in permitting the declaration to be amended without notice to the defendant. The rule requiring notice of applications to amend (Common Law Rule Number 12) has reference to amendments made in vacation, and not to those made in term. It is true that the demurrer in this case was submitted upon briefs, but it was heard and decided and the amendment was permitted in term. The mere fact that the parties chose to submit the demurrer upon briefs during the term, did not deprive the court of the power to make any appropriate order in term without requiring special notice to be given, that it could have made had the demurrer been submitted orally or if the case had not been before the court upon demurrer at all. There was, therefore, no error in permitting the amendment of the declaration without requiring special notice of the application to amend.

It is also contended that the court erred in depriving defendant of the right to demur to the amended declaration, by requiring it to "plead over" and in applying the demurrer to the amended declaration without a request on its part to that effect. This court is of opinion that such

contention is correct. When the declaration was amended the defendant should have had an opportunity to plead to the amended declaration by filing a demurrer if it deemed the amended pleading bad, or by filing pleas if it chose to file pleas instead of a demurrer. But the defendant was entitled to have its demurrer applied to the amended declaration if it desired, and the court did in fact give it the benefit of the demurrer to the same extent as if application had been made to that effect. The court below gave it the same benefit of the demurrer as if it had been filed to the amended declaration, which the defendant knew at the time of filing its pleas, and with this knowledge it filed pleas, without offering to file a demurrer or asking leave to do so. It now asks that the order overruling the demurrer be reviewed and reversed because as it insists the declaration was bad, and therefore the demurrer should have been sustained, instead of overruled. The grounds of demurrer are broad enough to include every objection urged to the declaration, as amended, and if the declaration is valid as against these objections, the judgment should not be reversed for this technical error in a mere matter of practice which did not and could not injure the defendant.

The principal questions sought to be presented by the objections to the declaration as amended depend upon the correct interpretation of certain provisions in the policy relating to notice of loss and proofs of loss, and upon the effect to be given other provisions requiring defendant's consent for other insurance to be evidenced by endorsements upon or additions to the policy. These provisions are substantially the same as those contained in the policy in the case of *Indian River State Bank v. Hartford Fire Ins. Co., supra,* as already stated except that the policy in that case provides that "if fire occur the insured shall give immediate notice of any loss," etc., while the policy in the present case omits the word "immediate." Probably the omission of this word is a clerical error in copying the policy in the transcript, but the omitted word is not regarded

as material to this case, as without it the proper construction of the provision as it stands would probably require the notice to be given within a reasonable time. So construing it what effect will the omission to give the notice of loss, and to furnish proofs of loss have upon the rights of the insured? In the case referred to above it was contended that the failure of the assured to make proofs of loss required by the policy within the time thereby provided wrought an absolute forfeiture thereof and released the insurer from all liability thereon. The court said: "Unfortunately for this contention it is founded upon a false premise. The provision of the policy sued upon herein requiring the assured to make proofs of loss within 60 days after the fire does not provide that such policy shall become void, forfeited or annulled upon a failure to furnish such proofs of loss within the prescribed time, and such is not the legal effect of said contract between the parties. Taken in connection with another provision of said contract of insurance the only effect of a failure to furnish the prescribed proofs of loss within the required time when such failure has not been excused or waived, is that it postpones the date when the amount of the loss becomes due and payable, and consequently postpones the time within which suit may be brought thereon, another part of the policy providing that the amount due upon the policy shall be payable 60 days after the satisfactory proofs of loss have been received by the company." The effect of a failure to give the notice of loss immediately or within a definite time was not considered in that case, but we think it is governed by the same principles. The provision requiring notice of loss is of the same nature as that requiring proofs of loss, the two are used in the same connection in the policy, and while each constitutes a condition to the right to sue, and must be performed if not waived before suit can be instituted, it is nowhere provided that a failure to perform them within the time specified shall release the company from liability or render the policy void. There are many provisions in

the policy requiring the performance by the insured of stipulations relating to the insurance after, as well as before the loss, the non-performance of which it is expressly stated will render the policy void or release the company from liability; but no such effect is stipulated for failure to give the notice and make the proofs within the required time. Many authorities can be found which require the notice of loss to be made within the time specified, but the same authorities also hold the same rule with respect to proofs of loss. We think the same principles which uphold the rule announced in the *Indian River State Bank v. Hartford Fire Insurance Company, supra,* require a like holding with respect to the notice of loss. In *Ermentrout v. Girard Fire & Marine Ins. Co.,* 63 Minn. 305, 65 N. W. Rep. 635, S. C. 30 L. R. A. 346, and other Minnesota cases it was held that the failure to comply with the requirement to give immediate notice was a condition precedent to the company's liability, but in *Mason v. St. Paul Fire & Marine Ins. Co.,* 82 Min. 336, — N. W. Rep. —, the previous cases are referred to and the doctrine announced that the result stated does not apply to the Minnesota standard policy because that policy does not provide that a failure to give notice or make the proofs within the time stated shall invalidate the policy or work a forfeiture of the rights of the insured, and that the failure to comply with the requirements within the time stated will simply postpone the day of payment. See, also, *Peninsular Land Transp. & Manuf'g Co. v. Franklin Ins. Co.,* 35 West. Va. 666, 14 S. E. Rep. 237; *Coventry Mutual Live Stock Ins. Association v. Evans,* 102 Pa. St., 281; *Hurt v. Employers' Liability Assur. Corp., Limited, of London, England,* 122 Fed. Rep. 828.

Having ascertained the proper construction of the provisions of the policy respecting notice and proofs of loss, we will consider the objections urged to the amended declaration, with respect to these matters. The declaration attempts to set out the legal effect of the policy, and it also

makes the policy itself a part of its averments. It is con-
tended that there is a variance between the alleged legal ef-
fect, and the instrument itself properly construed. The
variance it is thought arises upon a comparision of the
language of the declaration that the defendant promised
to pay "sixty days after notice and proof of such loss fur-
nished to the said defendant," and the stipulations of the
policy which it is claimed when properly construed require
it to pay sixty days after the notice of loss and proofs of
loss rendered in accordance with the terms of the policy,
*i. e.*, notice of loss given immediately or within a reasonable
time and proofs of loss rendered within 60 days after the
fire. As we have already shown this is not the proper con-
struction of the contract. The suit was begun February
19, 1901. The fire is alleged to have occurred August
21, 1900. The declaration alleges that proofs of loss were
rendered more than 60 days prior to the commencement
of the suit which would show that they were rendered prior
to December 19th, 1900, or within four months of the fire.
Even if no other notice of the loss was given except the
proofs of loss so alleged to have been furnished the declara-
tion shows that the proofs were of such a nature as to give
"notice of the loss," and as these proofs were furnished long
before the contract limitation upon the suit expired, it was
sufficient to authorize recovery in this case. The alleged
variance between the allegations of the declaration and the
terms of the policy made a part thereof does not exist if
the construction we have placed upon the policy is correct.

Another objection to the declaration is that it appears
therefrom that after the issuance of the policy sued on
another policy was obtained from the Home Insurance
Company for a like amount; that no permission to take
such additional policy was endorsed in writing upon the
Hartford policy, as appears from an inspection of the latter
made a part of the declaration, and that consequently the
policy became void under that clause which reads: "This
entire policy unless otherwise provided by agreement en-

dorsed hereon or added hereto shall be void if the insured now has or shall hereafter make or procure any other contract of insurance whether valid or not on property covered in whole or in part by this policy." The declaration as amended alleges that the additional policy was obtained in April and that defendant had due notice and proof of the additional insurance and made no objection thereto. If the defendant had notice of the additional insurance and made no objection thereto it must be held to have given its consent thereto. By its failure to object after notice of the fact, the insured was led to rely upon the validity of its policy, and it can not now after a loss, when it is too late for the insured to obtain other insurance be permitted to repudiate its liability upon the ground stated. This allegation shows a waiver of the provisions of the policy requiring that the permission for such additional insurance be endorsed on or added thereto, a proposition which we discuss under another assignment of error, and, therefore, the objection to the declaration now being considered is not tenable.

The fifth ground of the demurrer complains that the declaration does not aver performance of conditions precedent generally, nor particularly the performance of each and every condition precedent, nor set up excuse for nonperformance. We have shown that the amended declaration does allege the issuance of the policy, the payment of the premium and the loss, and that it sufficiently alleges performance of the provisions requiring notice and proof of loss, and waiver of the requirement that permission for other insurance must be endorsed on the policy, if that can properly be considered a condition precedent. In addition to these special allegations the declaration alleges generally that plaintiff "has fully complied on her part with all the conditions of said contract of insurance." If there are other conditions precedent not embraced in these averments they do not now occur to us, and none were pointed out either in the oral argument or briefs.

The defendant after its demurrer was overruled filed two pleas in substance, as follows: 1st. That the policy sued on contains a provision that "if fire occur the insured shall give immediate notice of any loss thereby in writing to this company, and defendant avers that the notice so required was not given in writing or otherwise."

2nd. That the policy sued on provides "that the insured within sixty days after the fire, unless such time is extended in writing by the insurance company shall render a statement to the insurance company signed and sworn to by the insured stating the knowledge and belief of the insured as to the time and origin of the fire, and defendant avers that the time was not extended and the statement so required was not rendered."

After plaintiff's demurrer to these pleas was overruled they filed their replication thereto alleging substantially, that on December 17, 1900, they sent by mail to defendant a statement in writing signed and sworn to by Ida H. Redding, the insured stating therein, among other things, "that the fire by which the insured building was destroyed occurred about 11 P. M., August 21, 1900, originating in the roof or attic of said building, but how said fire originated or the cause thereof was to said insured entirely unknown; that said fire did not originate by any act, design or procurement on the part of said insured, or in consequence of any fraud or evil practice done or suffered by the insured, and that any other information required by defendant would be furnished on call;" that said written statement so signed and sworn to by insured was received by defendant, and by it retained until the 24th day of December, A. D. 1900, and then returned to plaintiffs with the objections only that the same had not been furnished within sixty days after the fire occurred, and no other or further information was called for by the defendant. The defendant demurred to this replication, and the order overruling it is assigned as error.

It is beyond question that the written proofs of loss which the replication alleges were delivered to defendant in December after the fire in August were a sufficient "notice of loss" (*Weed v. Hamburg-Bremen Fire Ins. Co.,* 133 N. Y. 394, text 407, 31 N. E. Rep. 231; *Purcell v. St. Paul Fire & Marine Ins. Co.,* 5 N. Dak. 100, text 112, 64 N. W. Rep. 943) and as we have already seen the failure to give this notice immediately did not invalidate the policy, but merely postponed plaintiff's right to sue. The replication was, therefore, a complete answer to the first plea.

The objection to the replication as applied to the second plea is that the insured did not state in the proofs of loss her *belief* as to the origin of the fire. It does not appear that the insured had any belief as to the origin of the fire which she could state. She does state the time of the fire, that it originated in the attic, but how it originated, or the cause thereof, she swears was entirely unknown to her. She then proceeds to state her knowledge that it did not originate through her procurement, or in consequence of any fraud or evil practice done or suffered by her. There is no intimation anywhere that she had any belief upon the subject, and it affirmatively appears that she had no knowledge of any fact upon which to base a belief. We think the statement rendered substantially complies with the requirements of the policy. *McNally v. Phoenix Ins. Co.,* 137 N. Y. 389, 33 N. E. Rep. 475; *Howard Ins. Co. v. Hocking,* 115 Pa. St. 415, 8 Atl. Rep. 592; 13 Am. & Eng. Ency. of Law, p. 336. An offer to furnish other information, if desired, was made, and as the company did not avail itself of that offer by asking other information according to the allegations of the replication, it seems evident that it did not regard the absence of the statement of belief as material at that time.

It is contended that the replication is a departure from the declaration, but we think otherwise. The declaration alleges performance with respect to the notice of loss and proofs of loss, the pleas deny the allegations of performance

and the replication merely reiterates performance setting forth the facts at length. The replication does not set up waiver, but performance in accordance with the interpretation we put upon the provisions of the policy.

Nearly a year after the pleas above considered were filed, the defendant filed its third plea, alleging that "it is provided in the contract sued on 'this entire policy unless otherwise provided by agreement endorsed hereon or added hereto shall be void if the insured now has or shall hereafter make or procure any other contract of insurance whether valid or not, on property covered in whole or in part by this policy,' and defendant avers that after said policy was issued, to-wit: on the 18th day of April, A. D. 1900, the insured, Ida H. Redding, procured another contract of insurance on the property covered by the policy sued on, issued by the Home Insurance Company, which other insurance was not provided for by agreement endorsed on or added to said policy sued on." The plaintiffs filed their replication to this plea, and defendant its demurrer to the replication, and thereupon by agreement of parties a jury was waived and the cause was submitted to the judge upon an agreed statement of facts, to be decided in vacation. This agreement was made November 20, 1902. On December 2nd following, plaintiffs moved the court for leave to withdraw their replication to the third plea, and for leave to withdraw from the written submission and stipulation entered into November 20, 1902, basing the latter application upon the fact that other material testimony on behalf of plaintiffs had been discovered since the making of the agreement for submission, and because the pleadings, evidence and stipulations then on file did not fully and fairly present to the court the facts as they really existed. At the hearing it was shown that within five days after the written agreement was entered into plaintiffs notified defendant that they had discovered the existence of material facts not embraced in the written agreement, and requested that the additional matter be embraced in the agreed statement of

facts. Counsel declined to accede to the request, and there-upon the motion to withdraw from the submission was made. The motion was resisted principally because the additional matters could have been known to plaintiffs' counsel before the submission if he had exercised due diligence to ascertain them. The court granted the motion to withdraw plaintiffs' replication to the third plea, and also permitted plaintiffs to withdraw from the written submission, and to file new replications to the third plea, and these rulings are assigned as error.

Under our very liberal statute of amendments the court had ample power to permit plaintiffs to withdraw their replication and to file others. The matter rested very largely in the discretion of the court and no abuse of discretion is shown.

Nor do we perceive any impropriety in the ruling permitting plaintiffs to withdraw from the written stipulation. As defendant would not consent to amend the agreed statement of facts so as to embrace the additional matters which plaintiffs desired to incorporate therein, and as the court had not rendered its decision in pursuance of the stipulation, it was proper to permit plaintiff to withdraw from the stipulation in order that the case might take its regular course before a jury, and the parties thereby have an opportunity to present all pertinent facts. The defendant was not deprived of any substantial right by the order, it had not been misled to its disadvantage nor put to any trouble or inconvenience between the date of the submission and the plaintiffs' motion to withdraw. The mere fact that plaintiffs might have discovered the new matter by the exercise of proper diligence before they agreed to the submission, does not as a matter of law deprive them of the privilege of withdrawing from the submission for the case had not been decided by the court, and, therefore, the strict rule of diligence applicable to new trials for newly discovered evidence does not apply. The court had power to

make the order, the matter rested in its discretion, and no abuse of discretion is shown. 20 Ency. Pl. & Pr., p. 670.

The replication to the third plea filed by plaintiffs in pursuance of leave granted alleges, among other things, that on October 15th, 1889, plaintiff, Ida H. Redding, applied to the local agent of the defendant, who was also the local agent of the Aetna Fire Insurance Company, for insurance on the building; that the agent had authority on behalf of the companies to examine the building, fix its insurable value, write, countersign and issue policies thereon, and to collect and receive the premium; that he examined the building, fixed the insurable value at $3,000, issued to plaintiff the policy sued on and a like policy in the Aetna Insurance Company, and thereupon in discharge of his duty gave defendant immediate notice in writing of the $1,500 additional insurance; that defendant with full knowledge and notice of the existence of the additional insurance consented to and accepted the risk with the purpose and intent that same should be concurrent with additional insurance of $1,500, and not avoided thereby, and with purpose and intent to waive and forego any and all benefit of said provisions and conditions; that in faith thereof and with the sole purpose of procuring such insurance to be concurrent with additional insurance on said building to the amount of $1,500, and not otherwise, the plaintiff paid and defendant received the premium amounting to the sum of sixty dollars; that afterwards, on April 18th, 1900, the Aetna Insurance Company cancelled its policy, and in lieu and place thereof the same agent who was also the agent of the Home Insurance Company wrote, countersigned, issued and delivered to plaintiff Ida H. Redding the policy of the last named company for $1,500, mentioned in defendant's plea; that afterwards on December 24th, 1900, plaintiff, Ida H. Redding, in her sworn proofs of loss then furnished defendant notified and fully advised it of the policy for $1,500, in the Home Insurance Company, and the defendant then and there made no claim

that said additional insurance was not provided for by agreement endorsed on its policy, and set up no want of knowledge or consent on its part to the existence of said additional insurance, and claimed no forfeiture of its said policy by reason of said additional insurance or by reason of any failure to comply with the provisions and conditions set up in its said plea, and that defendant has made no tender of or offer to return the premium of sixty dollars so as aforesaid paid by plaintiffs to defendant for its said policy, but still retains the same. The defendant demurred to this replication, but the court overruled it, and this ruling is assigned as error.

It is contended that the replication is a departure from the declaration. The declaration alleges that defendant had. notice of the additional insurance and facts showing a waiver with respect to the provisions relating to endorsement on the policy of permission for such additional insurance. The plea does not traverse this allegation of waiver, nor deny that defendant had notice, but asserts merely that the permission for other insurance was not endorsed upon the policy. The replication reiterates waiver and alleges specifically the facts which it is claimed constitute such waiver. The plea is not directly responsive to the material allegations of the declaration, and for that reason might, perhaps, have been held bad upon demurrer, but the replication constitutes no departure from the declaration as both allege waiver.

It is also contended that plaintiffs having already filed one replication taking issue upon this plea, could not be permitted to file another, the argument being that while the statute (sec. 1063, Rev. Stats. 1892) permits more than one plea to be filed to the declaration, the same indulgence was not, and could not with safety be extended to replications. Sec. 1059, Rev. Stats. 1892, provides that a plaintiff "may file as many replications or subsequent pleadings to any pleading of the defendant as he may desire," and this lan-

guage fully answers defendant's contention without further comment.

The principal contention, however, relates to the sufficiency of the allegations of the plea to show a waiver of the provision of the policy requiring the company's permission for additional insurance to be endorsed on or added thereto, and it is strenuously insisted that the decision of the Supreme Court of the United States in *Northern Assurance Company v. Grand View Building Association*, 183 U. S. 308, — Sup. Ct. Rep. —, conclusively decides that question in favor of defendant. The provisions of the policy construed in that case so far as the question now being considered is concerned, are very similar to the provisions invoked by defendant contained in the policy sued on in this case. In that case the jury found that when the policy was issued, other insurance upon the property was in existence; that the agent who issued the policy was recording agent of the company having authority to countersign and issue policies; to accept fire insurance risks in its behalf and to collect and receive premiums therefor; that the agent knew of the other insurance when he issued the policy, and that no consent for such additional insurance was endorsed on the policy. It further appeared that knowledge of the additional insurance was never communicated to the company until proofs of loss were made, and that the company immediately upon receipt of such information denied any liability on that ground and tendered the insured the premium paid by him. The court held that the agent's authority in matters of waiver of condition was limited to the method designated; that is by endorsements on or written additions to the policy, and that as knowledge of the additional insurance was never acquired by the company until the loss occurred, when it immediately denied liability because of such additional insurance, and tendered the insured the premium, the company was not liable for the loss. This decision is directly in conflict with the opinions of many other courts and text writers, and several courts since it

was rendered have refused to follow it. *Thompson v. Traders' Insurance Company of Chicago,* 169 Mo. 12, — S. W. Rep. —; *The Orient Insurance Company v. McKnight,* 197 Ill. 190, — N. E. Rep. —. See, also, Clement on Fire Insurance as a Valid Contract, p. 413.

We do not think the decision in that case, even if it is correct, controls the present one. Here we have, not simply the knowledge of the local agent that the additional insurance existed, but the knowledge of the company itself, which with such knowledge accepted the premium, and thereby gave its consent to the additional insurance. Knowing that the additional insurance existed and that its consent thereto was required by the terms of its policy to be endorsed thereon in order to render its contract valid, it was its duty to so endorse it or decline to accept the premium which it knew was being paid for a supposed valid policy. The insured had no authority to endorse such consent on the policy, and if the company intended to act fairly and honestly and not to perpetrate a deliberate fraud by accepting the consideration for its contract known to be void, good faith required it either to endorse the policy, or to waive the provision requiring such endorsement. We can not suppose that a fraud was intended by the company, and the only reasonable conclusion is that by accepting and retaining the premium with knowledge of the additional insurance it intended to waive the provisions referred to. Clement on Fire Insurance as a Valid Contract, pp. 418, 428. In *Tillis v. Liverpool & London & Globe Ins. Co., supra,* we held that provisions of this nature might be waived, and the decision of the Supreme Court of the United States above referred to admits that this is so, provided the waiver is made by an officer having authority. See, also, to the same effect *Aetna Life Ins. Co. v. Frierson,* 114 Fed. Rep. 56; *Gwaltney v. Provident Savings Life Assurance Society,* 132 N. C. 925, — S. E. Rep. —; note 9 Am. St. Rep. p. 235; Kerr on Insurance, p. 238. It is insisted, however, that the replication does not allege that the company knew that the

agent had failed to endorse its consent to the additional insurance on the policy when it accepted the premium. We do not regard such knowledge material to the question in hand. Knowledge of the additional insurance was the important thing, and with such knowledge the company's plain duty required it to see that the proper endorsement was made on the policy if it elected to retain the premium, and making no effort to perform that duty it must be held to have waived the matter of endorsement. This is the reasonable view, and the only one consistent with fair dealing.

We have thus far treated the matter as if the policy mentioned in the plea constituted the additional insurance which existed at the time the policy in suit was issued, but the fact is not precisely that. The insurance in force when the policy was issued consisted of a policy in the Aetna which was afterwards cancelled and another issued in lieu thereof in the Home. The latter policy, however, was merely a substitute for the former, being issued for the same amount. We are of opinion that this substitution of one policy for the other does not constitute a breach of the condition against other insurance, for the defendant by accepting the premium for the policy in suit with knowledge of the additional insurance then existing, thereby gave its consent for additional insurance to the amount then in existence for the full period of its own policy. The mere substitution of one policy for another of the same amount was permissible under that consent. See *Stage v. Home Ins. Co. of the City of New York,* 76 App. Div. 509. Evidently the defendant did not regard the Home policy as having been taken without its consent, for according to the allegations of the replication it made no objection to the proofs of loss on that account, and in its plea there is no denial that it had due notice of the additional insurance.

Several objections to testimony offered at the trial were interposed by defendant which we will now consider. The proofs of loss were objected to on several grounds which

have been disposed of in what has been said in considering other assignments of error.

For the purpose of proving defendant's knowledge of the additional insurance the daily report sent by its agent to the defendant on the day the policy in suit was issued, was introduced in evidence by the plaintiffs, over certain objections interposed by defendant. This daily report was made up in pursuance of instructions to the agent to "give full copy of the policy" as well as other information, and it gives the written portions of the policy issued with the endorsement slips. In answer to questions propounded the agent stated that the company had no other policies in or on the same building, but in another place he stated there was $1,500 additional insurance on the property, and being required to "name" companies, amounts and rates he stated: "Hartford" which was evidently a clerical error in view of his other statement already referred to. It is contended that this report did not advise the company that there was any additional insurance upon the property, and even if it did, the additional insurance was stated to exist in the same company, which was not the truth. We think the report clearly advises the company that there was $1,500, additional insurance. Besides the plea does not deny the fact of knowledge. The conflicting statements in the daily report about its being in the same company put the defendant upon notice that some mistake had been made as to this matter, and it could easily ascertain by reference to its own records which statement was true. There was no uncertainty as to the fact that other insurance existed, which was the important matter for the company to know. The name of the company carrying the additional insurance was not required by the policy to be stated in the written consent. There was no error in admitting in evidence the daily report.

The court gave the general charge to find for the plaintiffs, to which an exception was taken. The defendant introduced no testimony, and without encumbering this opin-

ion with a further statement of the facts, we think it suffi-
cient to say there was no error in giving the charge.

The judgment is affirmed.

SHACKLEFORD and WHITFIELD, JJ., concur.

TAYLOR, C. J., and HOCKER, J., concur in the opinion.

COCKRELL, J., being disqualified, took no part in the
decision of this case.