**WESTERN LIFE INSURANCE CO., Plaintiff,**

v.

**McPHERSON K.M.P., E.N. Maisel & Associates, and Kannet Partners & Co., Defendants.**

Civ. A. No. 87–1389.

United States District Court, D. Kansas.

Dec. 29, 1988.

Harvey J. Snapp, Newton, Kan., Martin W. Bauer, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, Kan., for plaintiff.

Thomas D. Kitch, Steve M. Stark, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for defendants.

## OPINION AND ORDER

THEIS, District Judge.

This mortgage foreclosure action is presently before the court on cross motions for summary judgment. Plaintiff seeks en-

forcement of a due-on-sale clause which allowed plaintiff to accelerate payment on a note when the mortgaged property was sold without its prior written consent. Defendants allege that plaintiff unreasonably withheld its consent to the sale and seek summary judgment in their favor.

To rule favorably on a motion for summary judgment, the court must first determine that the matters on file regarding the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). By its very terms, Rule 56(c) "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Instead, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. However, the court must look at the record in the light most favorable to the non-moving party. *Lindley v. Amoco Production Co.,* 639 F.2d 671, 672 (10th Cir.1981). Pleadings and documentary evidence must be liberally construed in favor of the party opposing the motion. *Harman v. Diversified Medical Investments Corp.,* 488 F.2d 111, 113 (10th Cir.1973), *cert. denied* 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976). If the facts support an inference which would permit the non-movant to prevail, summary judgment is inappropriate. *Thomas v. United States Department of Energy,* 719 F.2d 342, 344 (10th Cir.1983).

For the purpose of the motions for summary judgment, the following facts are uncontroverted.

1. Western Life Insurance Co. (Western Life) is a Minnesota corporation.

2. On April 26, 1977, defendants McPherson K.M.P., a limited partnership, and E.N. Maisel & Associates (E.N. Mai-

sel), the general partner of McPherson K.M.P., executed and delivered to the Michigan National Bank of Detroit a promissory note in the sum of $1,040,000.00.

3. On April 26, 1977, defendants McPherson K.M.P. and E.N. Maisel executed and delivered a mortgage in favor of the Michigan National Bank of Detroit on certain real property located in the City of McPherson, McPherson County, Kansas, to secure the note of the same date. The mortgage was recorded on May 16, 1977, in Book 197, Page 391 of the mortgage records of McPherson County, Kansas.

4. On September 30, 1977, Michigan National Bank of Detroit, McPherson K.M.P. and E.N. Maisel entered into a note modification agreement which reduced the principal balance of the note to $1,000,000.00.

5. On October 6, 1977, the Michigan National Bank of Detroit assigned the note and mortgage described above to Western Life. The mortgage assignment was recorded on October 20, 1977, in Book 200, Pages 327 and 328 of the mortgage records of McPherson County, Kansas. Western Life is now the owner of the mortgage.

6. The thirty-fifth paragraph of the mortgage contains a due-on-sale clause which provides, in pertinent part:

The Mortgagor covenants and agrees that in the event that the Mortgagor shall cause or suffer the premises subject to this Mortgage to be sold or transferred, directly or indirectly without the prior written approval of Western Life Insurance Company, which shall not be unreasonably withheld, prior to the payment in full of the indebtedness secured hereby the Mortgagee shall have the right and option to declare the entire principal balance of the indebtedness secured hereby, together with all interest accrued therein, immediately due and payable. . . .

7. McPherson K.M.P. and E.N. Maisel did not give Western Life advance notice regarding the sale of the property. (Defendants have not specifically controverted this statement.)

8. McPherson K.M.P. and E.N. Maisel did not request written consent from Western Life prior to the sale of the property. (Defendants have not specifically controverted this statement.)

9. On December 5, 1986, Western Life received a letter dated November 28, 1986, signed by Barry Schwartz for Claridge Properties, Ltd., which provides in pertinent part:

Pursuant to a contract between Claridge Properties Ltd. and E.N. Maisel & Associates and Maisel & Associates of Michigan Limited Partnership, Claridge Properties Ltd. has agreed to purchase the above captioned properties through one or more limited partnerships to be formed. We are writing to you in your capacity as the holder of a mortgage on each of the above captioned properties, and we hereby request your consent to permit the newly created partnership or partnerships to acquire such properties subject to the above captioned mortgages.

The General Partner of such partnership will be a newly formed Canadian corporation and the principal limited partners will include the Charles R. Bronfman Trust, Charles R. Bronfman, Senator E. Leo Kolber, James D. Raymond and Barry Schwartz, all of whom have substantial net worth. A Price Waterhouse letter is enclosed which makes reference to the net worth of Charles R. Bronfman and The Charles Rosner Bronfman Trust. Furthermore, Senator Kolber is the Chairman and Mr. Raymond is the Executive Vice–President of The Cadillac Fairview Corporation, one of North America's largest and most successful real estate companies, and the investment group represents decades of experience as highly successful real estate developers and managers.

We have agreed to engage Malan Construction Company as managers of the properties in question.

The closing of this transaction is scheduled to occur on or about December 15, 1986 and we would request you to furnish us with your consent prior to such date. In the event that you should have any questions, please feel free to call the undersigned or Peter Coughlin....

The letter from Price Waterhouse referred to above provides:

Through our association over many years with the above-mentioned person [Charles R. Bronfman] and as auditors of the Charles Rosner Bronfman Trust, we have knowledge as to their aggregate net worth. Based on that knowledge, we confirm that the above-mentioned person and trust have an aggregate net worth, when substituting current market quotations for the carrying value of securities held, on November 30, 1986, in excess of US$750 million.

10. On December 5, 1986, in response to the above letter, Western Life attempted to contact Barry Schwartz or Peter Coughlin by telephone. Western Life was told that neither Schwartz nor Coughlin were available. Western Life left a message that the mortgage contained a due-on-sale clause and that the proposed sale would be a breach of the mortgage. Western Life requested that Schwartz or Coughlin return the call. Later that same day, Western Life again tried to reach Schwartz or Coughlin and again was unsuccessful. Western Life left another message and asked that Schwartz or Coughlin return the call. Neither Schwartz nor Coughlin returned Western Life's calls. From the record, it also appears that Western Life took no further action on the matter.

11. Without Western Life's prior written consent, McPherson K.M.P. and E.N. Maisel executed and delivered to defendant Kannet Partners & Company (Kannet), a Canadian limited partnership, a warranty deed conveying the mortgaged property. The warranty deed was recorded February 5, 1987, in Book 218, Page 178, in the deed records of McPherson County, Kansas.

12. The execution of the warranty deed constituted a sale and transfer under the terms of paragraph thirty-five of the mortgage, the due-on-sale clause.

13. Western Life received confirmation that a sale had been concluded in a letter

dated April 8, 1987, signed by Peter Coughlin, which provided in pertinent part:

> I am writing you in relation to the above referenced mortgage. As the attached section from the mortgage illustrates, your consent to the transfer is required, however, you must be reasonable in your judgement [sic]. We wrote to you on November 30, 1986 requesting your permission to the sale. We did not receive any written response to this request and interpreted this as approval.
>
> . . . . .
>
> We feel that we are entitled to your consent under the terms of the mortgage and would appreciate receiving written confirmation of this fact.

14. Upon learning of the sale of the property, Western Life offered to waive the alleged breach of the due-on-sale clause in return for an increase in the stated interest rate in the note (8½%) to the existing market rate of interest for mortgages. Kannet rejected this proposal. (Defendants have failed to provide any support for their assertion that the interest rate plaintiff requested may not have been the existing market rate of interest for mortgages.)

15. By filing this foreclosure action, Western Life exercised its option and declared the entire mortgage due and payable. In accordance with the original terms and conditions of the note and mortgage, rent from the subject property is paid directly to Western Life. Western Life has held the rent in escrow pending the resolution of this dispute. By agreement of the parties, Western Life shall be authorized to pay the payment due under the original mortgage, defendants shall waive any claim for conversion, and the excess proceeds shall be deposited with the registry of the court without prejudice to the parties' positions herein.

16. Through the discovery process, defendants have supplied written evidence of the financial credibility of defendant Kannet. Kannet's balance sheet reflects total assets of $8,857,952.00 and a net worth in excess of $1,500,000.00 as of December 31, 1986. Western Life did not consider the financial stability of Kannet prior to the sale. From the record, it appears that defendants neither identified Kannet as the purchaser before the sale nor provided specific financial information other than the letter from Price Waterhouse.

The parties agree that due-on-sale clauses are valid and enforceable. The parties also agree that defendants did not obtain the prior written consent of Western Life before conveying the property to Kannet. Therefore, the only issue before the court is whether Western Life unreasonably withheld its consent to the sale. To address some of the points made by the defendants, the court must, however, begin with a discussion of the law governing due-on-sale clauses.

Due-on-sale clauses are generally seen as having two purposes: (1) allowing acceleration of a note if the purchaser of the property is not a good risk; and (2) allowing the lender to keep its loan portfolio at current interest rates, thereby protecting its position in the money market. *See* Annotation, *Validity and Enforceability of Due–on–Sale Real–Estate Mortgage Provisions*, 61 A.L.R.4th 1071, 1073 (1988). Although a majority of states held due-on-sale clauses to be valid and enforceable, a substantial minority of states held such clauses to be unenforceable absent a showing that the transfer of the property would impair the lenders's security. *See generally id.*

In 1976, the Federal Home Loan Bank Board (Board), which regulates all federal savings and loan associations, became concerned with state-imposed restrictions on the ability of federal savings and loans to accelerate loans pursuant to due-on-sale clauses. Accordingly, the Board issued a regulation governing due-on-sale clauses. *See Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 145–46, 102 S.Ct. 3014, 3018, 73 L.Ed.2d 664 (1982). That regulation provided in relevant part:

> [A federal savings and loan] association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due

and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as [otherwise] provided in ... this section ..., exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract.

*Id.* at 146–47, 102 S.Ct. at 3019 (quoting 12 C.F.R. § 545.8–3(f) (1982)). In *de la Cuesta,* the Supreme Court held that this regulation preempted conflicting state limitations on the due-on-sale practices of federal savings and loan associations. *Id.* at 170, 102 S.Ct. at 3031.

Shortly after the Supreme Court's decision in *de la Cuesta,* Congress passed the Garn–St. Germain Depository Institutions Act of 1982, Pub.L. No. 97–320, 96 Stat. 1469. The Garn–St. Germain Act provides, in relevant part:

(1) Notwithstanding any provision of the constitution or laws (including the judicial decisions) of any State to the contrary, a lender may, subject to subsection (c), enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan.

(2) Except as otherwise provided in subsection (d), the exercise by the lender of its option pursuant to such a clause shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the lender and the borrower shall be fixed and governed by the contract.

12 U.S.C. § 1701j–3(b)(1)–(2). This statute preempts state laws and judicial decisions which restrict the enforcement of due-on-sale clauses, with some exceptions. Subsection (c) establishes a "window period" of three years (from October 15, 1982 to October 15, 1985) during which time those states which had previously imposed restrictions on due-on-sale clauses could continue to impose those restrictions. *Id.* § 1701j–3(c). Kansas is not a "window period" state. *See* S.Rep. No. 536, 97th Cong., 2d Sess. 22–23 & nn. 2–3, *reprinted in* 1982 U.S.Code Cong. & Admin.News 3054, 3076–77 & nn. 2–3. Subsection (d) lists certain transfers of residential real property which will not trigger a due-on-sale clause. 12 U.S.C. § 1701j–3(d). This exception is not applicable to the present case, since the property in question is not residential real property.

The legislative history to the Garn–St. Germain Act discussed certain types of state-imposed restrictions which were intended to be expressly preempted:

Most commonly, statutes or judicial decisions prohibit the exercise of due-on-sale clauses by limiting their enforcement to instances where the lender's security interest in the property collateralizing the loan will be impaired, or where the person assuming the loan fails to meet customary credit standards. Other statutory restrictions prohibit the full exercise of due-on-sale clauses by limiting the fee lenders can charge for transfer of a loan, or by restricting or disallowing interest rate changes during the life of the mortgage, or upon assumption of the mortgage loan.

S.Rep. No. 536, 97th Cong., 2d Sess. 23, *reprinted in* 1982 U.S.Code Cong. & Admin.News 3054, 3077.

■ Before proceeding to address the main issue before the court, the court must address several matters the defendants raised in their briefs. First, defendants urge the court not to rely on the cases cited by plaintiff which involve federal savings and loan associations. The defendants argue that, since plaintiff is not a federal savings and loan association, federal preemption in the area of federal savings and loans is not applicable here, and the cases involving federal savings and loans are of little value. The court agrees that the Federal Home Loan Bank Board regulation quoted *supra* does not apply to private sector lenders. The Garn–St. Germain Act does apply, however. *See* 12 U.S.C. 1701j–3(a)(2) (definition of lender). The Garn–St. Germain Act has preempted state restrictions on due-on-sale clauses involving all

lenders, making federal preemption an issue in the present case. Further, the cases involving federal savings and loans are persuasive since the language of the Garn–St. Germain Act quoted *supra* is almost identical to the Board's due-on-sale regulation.

Next, defendants urge the court to follow the cases they cite. Defendants rely on several cases for the proposition that a lender cannot invoke a due-on-sale clause to obtain an increase in the mortgage rate of interest. Several of the cited cases deserve some mention. Defendants' reliance on *Snow v. Western Savings & Loan Ass'n*, 152 Ariz. 27, 730 P.2d 204 (1986); *Silver v. Rochester Savings Bank*, 73 A.D.2d 81, 424 N.Y.S.2d 945 (1980); and *Iris v. Marine Midland Bank of Southeastern New York, N.A.*, 114 Misc.2d 251, 450 N.Y.S.2d 997 (N.Y.Sup.Ct.1982) is misplaced. As noted in the legislative history to the Garn–St. Germain Act, Arizona and New York are two of the states which had imposed restrictions on the enforceability of due-on-sale clauses. S.Rep. No. 536, 97th Cong., 2d Sess. 22 n. 3, *reprinted in* 1982 U.S. Code Cong. & Admin.News 3054, 3076 n. 3. Such per se restrictions are now preempted by the Garn–St. Germain Act. Further, the Arizona Supreme Court itself noted that, following October 15, 1985 (the effective date of the Garn–St. Germain Act since Arizona is a "window period" state), Arizona's restrictions on the enforcement of due-on-sale clauses were preempted. *Snow*, 152 Ariz. at 31 n. 4, 730 P.2d at 208 n. 4.

Defendants also cite *First Southern Federal Savings & Loan Ass'n v. Britton*, 345 So.2d 300 (Ala.Civ.App.1977), which involved events preceding the federal regulation authorizing federal savings and loans to enforce due-on-sale clauses. Further, the Alabama Supreme Court disapproved *Britton* in *Tierce v. APS Co.*, 382 So.2d 485 (Ala.1979). The Alabama Supreme Court declared that *Britton* was in error and held that a due-on-sale clause is not per se invalid when the lender's primary purpose for accelerating payment is to obtain a higher interest rate. *Id.* at 486–87.

Defendant cites *Continental Federal Savings & Loan Ass'n v. Fetter*, 564 P.2d

1013 (Okla.1977), which also involved events which preceded the federal regulation authorizing federal savings and loans to enforce due-on-sale clauses. Finally, defendant relies on *Fogel v. S.S.R. Realty Associates*, 183 N.J.Super. 303, 443 A.2d 1093 (1981). Prior to the passage of the Garn–St. Germain Act, the New Jersey Supreme Court had not ruled on the enforceability of due-on-sale clauses. There was a split of authority among the intermediate appellate courts on that issue. *See* Annotation, *Validity and Enforceability of Due-on-Sale Real-Estate Mortgage Provisions*, 61 A.L.R.4th 1070, 1086 & n. 21 (1988). The court finds this one New Jersey case to be of little precedential value.

Defendants also rely on a number of landlord-tenant cases. The court does not find these cases persuasive because state law has been preempted in the due-on-sale area and not in the landlord-tenant area. With all of these matters out of the way, the court finally turns to the matter at hand: whether plaintiff's consent to the sale was unreasonably withheld. Defendants' argument is twofold: (1) it is unreasonable for a lender to condition its consent to a transfer upon receiving an increased interest rate; and (2) the only factor a lender may reasonably consider in determining whether to give its consent is the creditworthiness of the proposed buyer, *i.e.*, whether the proposed transfer of the property would impair the lender's security.

The Garn–St. Germain Act provides, in relevant part that "the exercise by the lender of its option pursuant to such a clause shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the lender shall be fixed and governed by the contract." 12 U.S.C. § 1701j–3(b)(2). The court thus begins and ends with the specific language of the due-on-sale clause involved here. That clause provides that if the mortgagors (McPherson K.M.P. and E.N. Maisel) sell the mortgaged property "without the prior written approval of Western Life Insurance Company, which shall not be unreasonably

withheld," Western Life may accelerate the remaining indebtedness.

█ It is not disputed that the parties to a loan contract can limit a lender's right to exercise a due-on-sale clause to situations when a change in ownership would impair the lender's security. *See Frets v. Capitol Federal Savings & Loan Ass'n*, 238 Kan. 614, 712 P.2d 1270 (1986). The contract involved in the present case does not, however, expressly limit the lender's right to exercise the due-on-sale clause to cases of impairment of security.

From their briefs, it is not entirely clear whether defendants are arguing that Kansas law requires the court to consider certain factors to determine the reasonableness of the lender's actions or whether the contract itself requires this consideration. Kansas law has never imposed restrictions on the enforceability of due-on-sale clauses. If Kansas law had, such restrictions would now be preempted by the Garn–St. Germain Act. Therefore, if there are limitations or restrictions on the plaintiff's exercise of the due-on-sale clause, they must arise from the language of the contract itself.

The parties disagree over who bears the burden of showing the reasonableness or unreasonableness of plaintiff's withholding of its consent. The contract does not address this issue. Plaintiff asserts that defendants must show that plaintiff acted unreasonably. Defendants assert that plaintiff must show that it acted reasonably. The court need not decide who bears the burden of proof, but will assume that plaintiff does bear the burden.

The due-on-sale clause quoted earlier requires the mortgagors to obtain plaintiff's *prior* written approval of any sale or transfer of the mortgaged property. The contract does not specify prior or subsequent approval. The court rejects defendants' argument that conduct occurring after the sale is somehow relevant to whether prior consent should have been given. The court has examined what occurred prior to the sale of the mortgaged property. It is undisputed that plaintiff was notified by an agent of defendants that a sale was about to occur. Notification is not the same as approval, however, and the contract does not specify that mere notification is enough. The facts show that upon receiving notification, plaintiff attempted to contact the defendants' agent. Plaintiff's calls were never returned. Prior to the sale to Kannet, the defendants had not identified the proposed purchaser and did not provide any detailed financial information. Therefore, prior to the sale, plaintiff could not determine whether the purchaser was creditworthy and, consequently, whether the sale would impair its security. Prior to the sale, plaintiff did not condition its consent on an increase in the mortgage interest rate. Usually, reasonableness is a question of fact which is inappropriate for summary judgment. In the present case, however, no material facts are in dispute. The court holds that plaintiff reasonably withheld its consent prior to the sale to Kannet. The defendants breached the due-on-sale clause by selling without plaintiff's prior written consent. Plaintiff is entitled to summary judgment in its favor.

█ If, despite the plain language of the due-on-sale clause, plaintiff's conduct subsequent to the sale is relevant to a determination of reasonableness, then the court must examine plaintiff's conduct after the sale. The issue is whether, under the contract, plaintiff had the right to demand an increase in the interest rate in exchange for its consent to the sale. The mortgage requires that plaintiff's approval of any sale "shall not be unreasonably withheld":

> The wording, however, of the lender's agreement—that "consent shall not be unreasonably withheld"—is singularly inapt to express a contractual intention that the withholding of consent is unreasonable save under one particular circumstance, that is, where the sale threatens to impair the security of the debt.

*Torgerson–Forstrom H.I. of Willmar, Inc. v. Olmsted Federal Savings & Loan Ass'n*, 339 N.W.2d 901, 903 (Minn.1983). This "reasonableness" language permits the lender to condition its consent to the sale on a reasonable increase in the interest

rate on the loan secured by the property. *Id.*

Allowing the lender to request an increase in interest rate serves one of the key purposes of the due-on-sale clause, which is to allow a lender to keep its loan portfolio at current interest rates. *See* Annotation, *Validity and Enforceability of Due–on–Sale Real–Estate Mortgage Provisions,* 61 A.L.R.4th 1071, 1073 (1988). The court agrees with the following statement of the rationale:

> [L]oan agreements frequently permit a borrower to pay off a loan before it is due. When interest rates are high, a lender runs the risk they will drop and that the borrower will refinance his debt elsewhere at a lower rate and pay off the loan, leaving the lender with money to loan but at a less favorable interest rate. On the other hand, when money is loaned at low interest, the lender risks losing the benefit of a later increase in rates. As one protection against the foregoing contingency, a due-on-sale clause is employed permitting acceleration of the due date by the lender so that he may take advantage of rising interest rates in the event his borrower transfers the security. This is merely one example of ways taken to minimize risks by sensible lenders.

*Cherry v. Home Savings & Loan Ass'n,* 276 Cal.App.2d 574, 579, 81 Cal.Rptr. 135 (1969). Defendants do not argue that plaintiff demanded an unreasonable interest rate. The court therefore holds that plaintiff did not act unreasonably in conditioning its consent to the sale on an increase in the mortgage rate of interest.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment is hereby denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is hereby granted. Plaintiff shall prepare the journal entry of judgment for the court's signature.