579 So.2d 232 (1991)
DESTIN SAVINGS BANK, a Florida Banking Corporation, Appellant,
v.
SUMMERHOUSE OF FWB, INC., a Florida Corporation, Summerhouse, Inc., a Florida Corporation, M. Victor Anderson, and John H. Hobbs, Appellees.
No. 90-1966.
District Court of Appeal of Florida, First District.
April 29, 1991.
Douglas L. Stowell and Gary J. Anton, Stowell, Anton & Kraemer, Tallahassee, for appellant.
Robert E. Lee, Fort Walton Beach, for appellees.
ZEHMER, Judge.
Destin Savings Bank appeals a final judgment in this declaratory judgment action brought by the appellees. In that judgment, the court ruled that: (1) Destin Savings had waived its right to accelerate the balance due on a promissory note and mortgage on which M. Victor Anderson *233 and Summerhouse of Fort Walton Beach, Inc., were mortgagors; (2) one of the terms under which Destin Savings agreed to approve transfer of the mortgaged property and assumption of the loan by John Hobbs and Summerhouse, Inc., was unreasonable; and (3) Hobbs and Summerhouse, Inc., would be permitted to assume the mortgage indebtedness of Anderson and Summerhouse of FWB, Inc., under the original mortgage and note. We hold that the circuit court erred in applying a reasonableness standard in disapproving the conditions Destin Savings imposed for the assumption of the mortgage and note, and reverse.
The material facts are somewhat complex. Anderson was planning to construct and operate a restaurant and lounge business to be known as the Summerhouse Restaurant and Lounge in Fort Walton Beach. On June 8, 1987, Anderson, as president of Summerhouse of FWB, executed and delivered a promissory note, together with a Mortgage and Security Agreement, to Destin Savings pursuant to a loan to facilitate Anderson's development of the restaurant. Paragraph 20 of the Mortgage and Security Agreement provides:
20. No Transfer. It is understood and agreed by the Mortgagor that as part of the inducement to Mortgagee to make the loan evidenced by the Note, Mortgagee has considered and relied on the creditworthiness and reliability of Mortgagor. Mortgagor covenants and agrees not to sell, convey, transfer, lease or further encumber any interest in or part of the Mortgaged Property without prior written consent of Mortgagee, and any such sale, conveyance, transfer, lease or encumbrance made without Mortgagee's prior written consent shall be void. If any person should obtain an interest in all or any part of the Mortgaged Property pursuant to the execution or enforcement of any lien, security interest or other right, whether superior, equal or subordinate to this Mortgage or the lien hereof, such event shall be deemed to be a transfer by Mortgagor and an event of default hereunder.
Paragraph 11 of that agreement provides that:
11. Acceleration. If an event of default shall have occurred, Mortgagee may declare the outstanding principal amount of the Note and the interest accrued thereon, and all other sums secured hereby, to be due and payable immediately. Upon such declaration such principal and interest and all other sums shall immediately be due and payable without demand or notice.
In April of 1989, a realtor representing Hobbs approached Anderson about the possibility of selling the restaurant. When Anderson contacted Destin Savings regarding the potential sale and the possibility of Hobbs assuming the mortgage, June Biggs, vice president of Destin Savings, informed Anderson that the financial condition and strength of the purchaser would have to be verified before Destin's board of directors could approve an assumption of the loan. On May 2, 1989, without obtaining the consent of Destin Savings, Anderson and Hobbs entered into a contract for the sale of the restaurant to Hobbs. When Anderson and Hobbs delivered the contract and Hobbs's financial statement to Destin, Biggs indicated that "on the surface, assuming that everything was basically true ... there will be no problem"; but she explained that she could not personally approve the assumption and that there would have to be approval by the Board. During a meeting on the morning of May 21, 1989, Hobbs mentioned to Biggs that he dealt with another bank regarding the purchase of a house, and Biggs inquired as to why he did not deal with Destin Savings. That afternoon or the next morning, Anderson informed Hobbs that Destin Savings had contacted him and told him that they wanted either a second mortgage on Hobbs's home or a hundred thousand dollar certificate of deposit before they would approve the assumption. A few days later, Biggs wrote to Hobbs, stating that:
Destin Savings Bank has approved your request to assume the above referenced *234 loan subject to the terms and conditions outlined below.
* * * * * *
3.) Second mortgage on property located at 157 Beal Street (first mortgage balance not to exceed $200,000) OR pledge of $100,000 certificate of deposit to be opened with Destin Savings Bank.
Hobbs responded in writing that he considered all the requirements for assumption acceptable, "except your requirement for either a second mortgage on the Hobbs' residence or pledge of a $100,000.00 certificate of deposit," and that "the circumstances of the seller and buyer have compelled closing of the sale notwithstanding the lack of a proper understanding with your bank." Thereafter, Anderson and Hobbs closed the sale of the business without receiving the prior written consent of Destin Savings. At the same time, Anderson and Hobbs executed an agreement concerning the assumption of the Destin Savings mortgage which acknowledged that the transfer was taking place notwithstanding the lack of Destin Savings' prior written consent. Negotiations continued between Hobbs, Anderson and Destin Savings without reaching a satisfactory resolution of the mortgage assumption on acceptable terms.
Accordingly, Hobbs, Summerhouse, Inc., Anderson, and Summerhouse of FWB, Inc., filed a complaint for declaratory judgment against Destin Savings, in which they requested the court to determine: "(a) Whether or not the defendant can require additional collateral as a requirement to the assumption of the described loan; (b) Whether or not the security of the defendant has been impaired; (c) Whether or not the defendant can accelerate the balance of the loan; and (d) Whether or not the defendant should be enjoined from foreclosing its Mortgage and Security Agreement during the pendency of this action." Destin Savings answered and filed a counterclaim for foreclosure under the note and mortgage and other damages. After a nonjury trial, the circuit court entered a final judgment ruling in part that:
(1) pursuant to paragraph 20 of the Mortgage and Security Agreement, Destin "had the right to accelerate the balance due and owing in the event of transfer of ownership without its prior written consent but by its conduct and course of business dealings with the Plaintiffs has waived such right";
(2) all terms, conditions, and contingencies for assumption contained in Destin's May 25, 1989 letter were reasonable and just, except that the letter "unreasonably requires at the heading, SECURITY, paragraph 3.), as additional collateral security a second mortgage on the residence of the Plaintiff, JOHN H. HOBBS, or the pledge of a $100,000.00 certificate of deposit to be opened with DESTIN SAVINGS BANK";
(3) Hobbs and Summerhouse, Inc., are permitted to assume Summerhouse of FWB's mortgage indebtedness to Destin upon a written acceptance of the terms in the commitment letter, except for the provisions requiring additional collateral, "upon notice acceptable to this court confirming such acceptance, the Defendant's [Destin] Counterclaim of Foreclosure shall then be dismissed with prejudice ...";[1] and
(4) "Jurisdiction of this action is retained to enter further orders that are proper, including without limitation, such orders as shall be appropriate to the award of attorney [sic] fees and court costs based upon further conduct of the parties in accordance with this Final Judgment."
On appeal, Destin Savings contends that the circuit court erred in imposing the "reasonableness standard" on the terms and conditions that Destin Savings had required of Hobbs prior to giving consent to the transfer of the mortgaged property and the assumption of the loan. Destin Savings argues that since the Mortgage and Security Agreement between it and *235 Anderson contains a due-on-sale clause that gives Destin Savings the absolute right to refuse to consent to a transfer of the property and contains no provision stating that Destin Savings will not unreasonably withhold its consent to any proposed transfer, according to the Garn-St. Germain Depository Institutions Act, 12 U.S.C. § 1701j-3, the circuit court could not impose a "reasonableness" standard on any condition Destin Savings required to be satisfied before it would consent to the transfer and assumption. Appellees contend that, rather than determining whether the circuit court erred in imposing a reasonableness standard on the conditions Destin Savings required for consent, this court should affirm the final judgment on the ground that Destin Savings, by its conduct and course of business dealings with Hobbs and Anderson, waived its right to accelerate the balance due and owing on the mortgagee and note as a result of the transfer of ownership.
Before discussing the applicability of the Garn-St. Germain Act to this case, we consider appellees' contention that this case should be resolved on the waiver issue only. There is no evidence in the record to support their contention that Destin Savings, by its course of conduct and course of business dealings with Hobbs and Anderson, waived its right to accelerate the balance due as a result of the transfer of ownership of the mortgaged property without its consent. Waiver is defined as an intentional relinquishment or abandonment of a known right or privilege, or conduct that warrants an inference of the intentional relinquishment of a known right. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). See also Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263 (Fla. 1945); Jonas v. City of West Palm Beach, 76 Fla. 66, 79 So. 438 (Fla. 1918). In order to establish a valid waiver, the following elements must be satisfied: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit that may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish that right, privilege, advantage or benefit. 22 Fla.Jur.2d Estoppel and Waiver § 89 (1980).
In this case, the circuit court stated in the final judgment that Destin Savings "by its conduct and course of dealings with the Plaintiffs" had waived its right to accelerate the balance due and owing under the Mortgage and Security Agreement; but that statement is not the equivalent of a finding that Destin Savings intentionally and voluntarily relinquished its right to accelerate the balance on the loan in the event that Anderson transferred the property without first obtaining its consent. More importantly, there is no evidence in the record to support such a finding. The evidence only proved that, while Biggs may have made statements to Hobbs and Anderson to the effect that if the information provided about Hobbs's financial situation were true "there will be no problem," Biggs's statements were always conditioned by the qualification that the assumption would be subject to approval by Destin Savings's board. This evidence is insufficient to support any finding that Destin Savings intentionally waived its right to accelerate the balance under the due-on-sale clause. The best this evidence can be said to prove is perhaps that Destin Savings would have been estopped to deny that it would have consented to the transfer if Board approval were given, an issue not pleaded or found by the court.
Moving next to the applicability of the Garn-St. Germain Depository Institutions Act, section 1701j-3(b) of the Act provides in pertinent part:
(1) Notwithstanding any provision of the constitution or laws (including the judicial decisions) of any State to the contrary, a lender may, subject to subsection (c) of this section, enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan.
(2) Except as otherwise provided in subsection (d) of this section, the exercise by the lender of its option pursuant to such a clause shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the lender *236 and the borrower shall be fixed and governed by the contract.
(Emphasis added). 12 U.S.C. § 1701j-3(b). Section 1701j-3(a)(3) defines "real property loan" as "a loan, mortgage, advance, or credit sale secured by a lien on real property, the stock allocated to a dwelling unit in a cooperative housing corporation, or a residential manufactured home, whether real or personal property." Section 1701j-3(d) lists certain transfers of residential real property which will not trigger a due-on-sale clause. Anderson and Hobbs argue that this case involves a commercial transaction, and therefore the Act should not be applied because its legislative history refers to only a concern for the relationship between the lender and "home buyers" and neither refers to nor discusses the prior position of individual states regarding the enforcement of due-on-sale clauses in the commercial lending context. We reject this contention and hold that the Act can be applied in commercial transactions like the one under consideration in this case. While the legislative history of the Act expresses concern about the problems confronting lenders and borrowers that have arisen from state actions restricting the enforcement of due-on-sale clauses by lenders holding home mortgages, the legislative history neither discusses the applicability of section 1701j-3 to commercial transactions nor expressly states that the Act cannot be applied in commercial transactions. See S.Rep. No. 97-536 and S.Conf.Rep. No. 97-641, reprinted in 1982 U.S.CODE CONG. & AD.NEWS 3054, 3074-3079; S.Rep. No. 98-275, H.Conf.Rep. No. 98-551, reprinted in 1983 U.S.CODE CONG. & AD. NEWS 1768. The federal courts have applied section 1701j-3(b) of the Act to commercial transactions similar to the one involved here, see, e.g., Western Life Ins. Co. v. McPherson K.M.P., 702 F. Supp. 836 (D.Kan. 1988); Casa Grande, Inc. v. Minnesota Mut. Life Ins. Co., 596 F. Supp. 1385 (S.D.Miss. 1984), and Hobbs and Anderson cite no cases holding that section 1701j-3(b) of the Act cannot be applied to commercial transactions. As neither the Act itself nor its legislative history evidences an intent to preclude application of section 1701j-3(b) to commercial transactions, we follow the federal decisions that have applied section 1701j-3(b) to commercial transactions similar to the one in this case.
With respect to the effect of due-on-sale clauses, section 1701j-3(b) requires that the lender's exercise of its option under such a clause be governed "exclusively" by the terms of the loan contract, and that all of the lender's and the borrower's rights be governed by the contract containing that clause. That language specifically precludes a court from imposing a court-fashioned standard of "reasonableness" on a lender's exercise of its option under such a clause where the loan agreement contains no language indicating that the lender's consent will not be unreasonably withheld. For example, in Caven v. American Federal Savings & Loan Association of Colorado, 837 F.2d 427, 431 (10th Cir.1988), the mortgagee refused to consent to assumption of the mortgage unless the interest rate was increased, and a modification to the loan agreement provided that if ownership of the mortgaged property were changed without the mortgagee's consent being first obtained, the entire indebtedness would become due and payable at the option of the mortgagee. The court, noting that the modification agreement included no conditions or limitations on the mortgagee's right to approve an assumption of the loan, held that the mortgagee "had the absolute right and power to call the loan to [the purchaser] due and payable upon any transfer, and ... was entitled to a summary judgment to that effect." Id. Similarly, in Eyde Brothers Development Co. v. Equitable Life Assurance Society, 697 F. Supp. 1431 (W.D.Mich. 1988), affirmed, 888 F.2d 127 (6th Cir.1989), the mortgagee refused to consent to a transfer of the mortgaged property unless the interest rate was increased and the due-on-sale clause contained no language restricting the mortgagee's prerogative to grant or deny its consent to the proposed transfer. The court rejected the mortgagor's argument that the due-on-sale clause imposed an unreasonable restraint on alienation, noting that there is a general rule that *237 "pays deference to the parties' freedom of contract, promising enforcement of a prepayment clause in accordance with the parties' agreement," and stating that there is a "clear legislative preference for upholding the parties' freedom of contract." 697 F. Supp. at 1434-35. See also Cherry v. Home Savings & Loan Association, 276 Cal. App.2d 574, 81 Cal. Rptr. 135, 138-39 (1969) disapproved on other grounds by Wellenkamp v. Bank of America, 21 Cal.3d 943, 148 Cal. Rptr. 379, 582 P.2d 970, 976 (1978) (in light of the provision in the deed of trust requiring the bank's written consent before the property is transferred, the bank's refusal to accept another individual as owner of the security unless it received a higher interest rate demonstrated no lack of good faith or fair dealing, "but merely insistence on its rights under the terms of the deed of trust" and the bank "had no obligation to act only in a manner which others might term `reasonable'").
On the other hand, in cases where the agreements contain in the due on sale clause language to the effect that consent to assumption will not be unreasonably withheld, court decisions have frequently construed such a provision as authorizing the trial court to test the withholding of consent against a standard of "reasonableness." See, e.g., Rubin v. Centerbanc Federal Savings & Loan Association, 487 So.2d 1193 (Fla. 2d DCA 1986); Western Life Ins. Co. v. McPherson K.M.P., 702 F. Supp. 836 (D.Kan. 1988).
In this case, paragraphs 11 and 20 of the Mortgage and Security Agreement specifically state that the mortgagors (Anderson and Summerhouse of FWB) could not sell or transfer any portion of the mortgaged property without first obtaining the mortgagee's (Destin) consent, and any such sale or transfer of the property without the mortgagee's consent will be a default. This effectively gives the mortgagee the option of accelerating the outstanding principal and interest due and payable immediately. No provision of the agreement contains any language to the effect that Destin Savings would not unreasonably withhold consent to transfer or sale of the mortgaged property so as to authorize the imposition of any "reasonableness" standard on Destin Savings's withholding of consent. Because there is no such language in the agreement itself, the circuit court could not imply such a condition from the agreement as a whole. Therefore, Destin Savings had the absolute right to withhold its consent to transfer for any reason that is not illegal, including the requirement of additional collateral and Hobbs's failure to satisfy the additional collateral requirement. 12 U.S.C. § 1701j-3; Caven, supra; Eyde Brothers, supra. It necessarily follows that the trial court exceeded its authority in going beyond the express terms of the agreement by declaring that the additional collateral requirements imposed by Destin Savings were not reasonable and could not be enforced as a condition of the assumption of the indebtedness by Hobbs and Summerhouse, Inc.
Accordingly, the judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ERVIN and NIMMONS, JJ., concur.
NOTES
[1] The final judgment also provides that "[i]n the event the Plaintiffs ... do not furnish timely acceptance ..., upon notice acceptable to this court conforming such non-acceptance, this court, without further hearing, reserves jurisdiction for entry of such order as shall be appropriate on the Defendant's Counterclaim of Foreclosure."