622 So.2d 492 (1993)
Leila FAWAZ, Appellant,
v.
FLORIDA POLYMERS and Fiesco, Appellees.
No. 91-3466.
District Court of Appeal of Florida, First District.
July 13, 1993.
Rehearing Dismissed August 18, 1993.
*493 William G. Berzak, Orlando, Bill McCabe, Longwood, for appellant.
Thomas H. McDonald, Kristin J. Swanson, Rissman, Weisberg, Barrett & Hurt, P.A., for appellees.
ERVIN, Judge.
Leila Fawaz appeals the denial of her claims for workers' compensation benefits, which was based in part on the defense set out in Martin Co. v. Carpenter, 132 So.2d 400 (Fla. 1961).[1] She asserts the judge of compensation claims (JCC) erred in applying *494 this defense and the misrepresentation provision of Section 440.15(5)(a), Florida Statutes (Supp. 1990), to deny her claims in their entirety, or, in the alternative, in denying her claims for temporary partial disability (TPD) and temporary total disability (TTD) benefits, medical benefits for treatment by Dr. Yaszemski and Beth Israel Hospital, vocational rehabilitation benefits, and costs and attorney's fees. We agree, reverse the denial, and remand the case for further proceedings.
Sometime during 1984 or 1985, Fawaz fell at her home in Massachusetts and injured her back, sustaining a compression fracture at L-3. She underwent two partial bilateral laminectomies in 1987 and was diagnosed as having post-traumatic lumbar stenosis with nerve-root irritation. Claimant testified that she recovered quickly and had no problems until her industrial accident of December 6, 1988, when she fell while working for the employer, Florida Polymers. She was diagnosed by Dr. Fred Schroeder, an orthopedist, as having a musculoligamentous strain of her back resulting from the injury on December 6, 1988, as well as bone protrusion caused by the previous fracture.
In rejecting the claim, the JCC relied on Martin v. Carpenter, and ruled that claimant had misrepresented her medical history on her employment application and that the employer had relied upon her misrepresentations to its detriment. In addition, the JCC decided that the employer/servicing agent (E/SA) had established the elements of misrepresentation under Section 440.15(5)(a), Florida Statutes (Supp. 1990). In accepting the Martin v. Carpenter/misrepresentation defense, the JCC rejected claimant's argument that the E/SA was estopped or had waived its right to assert the defense by its execution of two stipulations involving payment of those benefits. Alternatively, the JCC specifically rejected each of Fawaz's claims for benefits, even absent any misrepresentation, as will be discussed infra.
Initially, we agree with the JCC that the E/SA did not waive its right to assert the misrepresentation defense. "Waiver is defined as an intentional relinquishment or abandonment of a known right or privilege, or conduct that warrants an inference of the intentional relinquishment of a known right." Destin Sav. Bank v. Summerhouse of FWB, Inc., 579 So.2d 232, 235 (Fla. 1st DCA 1991) (emphasis added). Moreover, waiver cannot be established "unless the party against whom the waiver is invoked was in possession of all the material facts." Fireman's Fund Ins. Co. v. Vogel, 195 So.2d 20, 24 (Fla. 2d DCA 1967).
Admittedly, when the E/SA entered into the first joint stipulation with claimant on June 19, 1989, which the JCC accepted by order dated June 26, 1989, the E/SA was then aware of most of the essential facts upon which it later asserted its defense. The same can be said for the second stipulation, which the parties entered into on February 22, 1990, and the JCC approved on February 28, 1990. At claimant's deposition taken on April 26, 1989, Fawaz testified that she had had back surgery in Massachusetts three or four years previously. At that point she was confronted by the E/SA's attorney with her misrepresentations on the employment application. Claimant merely answered that she had orally informed her supervisors, and named two of them, but this allegation was denied by the two supervisors.
The E/SA had also received information from two of claimant's attending physicians regarding claimant's prior condition before executing the two stipulations. Dr. Richard Lapp[2] testified during his May 16, 1989 deposition that he observed claimant's L-3 compression fracture on an x-ray, and that he obtained a history from claimant wherein she advised that she had received surgery for a back injury while she lived in Massachusetts. Dr. Fred Schroeder's notes of January 23, 1989 indicate that claimant told him she had a broken spine, *495 and his notes of June 13, 1989 state that an x-ray revealed "an old injury," a vertical fracture of L-3. Thus, as indicated above, the record clearly demonstrates that the E/SA was aware before it signed the two stipulations that claimant had sustained a prior back injury, and that claimant had answered several questions regarding her medical history untruthfully on her employment application.
Absent from the record, however, is proof that the E/SA had any firm knowledge of one of the necessary elements for the Martin v. Carpenter defense, namely, a causal connection between the work-related injury and claimant's false representations.[3] For instance, Dr. Lapp, while noting claimant's preexisting back injury, admitted that he was uncertain whether claimant's work-related accident had aggravated her prior condition and that further diagnostic testing needed to be conducted in order to resolve the question. Additionally, Dr. Schroeder did not inform the E/SA before the execution of the stipulations that any aggravation of claimant's prior condition had occurred. Instead, his initial diagnosis was that claimant had sustained a musculoligamentous strain, a condition unrelated to claimant's previous back injury.
Indulging in the presumption that the appellee, as the prevailing party, is entitled to the benefit of all reasonable inferences that can be drawn from the evidence in a light most favorable to it, we consider it apparent from our review of the record that the E/SA lacked complete knowledge before it executed the stipulations that the injuries claimant allegedly suffered in the industrial accident were related to her earlier back injury. Therefore, an essential requisite of the Martin v. Carpenter defense had not yet been confirmed, and because the E/SA was not in possession of all the material facts regarding the defense, the E/SA cannot be said to have waived it. Our conclusion in this regard does not, however, mandate affirmance of the JCC's order of denial.
Even if we were to assume that the E/SA successfully established all the elements necessary to prove the Martin v. Carpenter defense, the E/SA nonetheless had the burden, upon claimant's assertion of estoppel based on the stipulations, to show that the stipulations it had entered into should be set aside. The test therefor is not the same as that necessary to establish waiver. A party may obtain relief from the binding effect of a stipulation only by showing it was induced by "fraud, overreaching, misrepresentation or withholding facts by the adversary or some such element as would render the agreement void." Steele v. A.D.H. Bldg. Contractors, Inc., 174 So.2d 16, 19 (Fla. 1965). The party seeking to avoid the stipulation is ordinarily required to file a motion seeking withdrawal of the stipulation supported by an affidavit showing good cause, asserting that the agreement was obtained by fraud, misrepresentation, or mistake of fact. Henrion v. New Era Realty IV, Inc., 586 So.2d 1295, 1298 (Fla. 4th DCA 1991); Lopez v. Dublin Co., 489 So.2d 805, 807 & n. 3 (Fla. 3d DCA 1986); Curr v. Helene Transp. Corp., 287 So.2d 695, 697 (Fla. 3d DCA 1973). The record in the instant case fails to reveal, however, that the E/SA complied with the above rule by filing such a motion. Nevertheless, because the employer's noncompliance was not made an issue below, it is our responsibility to review the record to determine whether the E/SA otherwise met its burden of establishing sufficient evidence to set aside the stipulations. We conclude that it did not.
Only two grounds exist in the case at bar which could conceivably be applied to set aside the parties' agreements: fraud and mistake of fact. Although the evidence clearly supports the JCC's finding that the claimant made a false representation on her employment application, no evidence was produced showing that the two stipulations themselves were procured by fraud. See Steele, Henrion, Lopez, Curr. While claimant asserted in her April 1989 deposition that she had orally informed the employer's supervisors of her prior back *496 injury, notwithstanding her written representation that no prior condition existed, the supervisors denied claimant's assertion. Thus, as of the time of the stipulations in June 1989 and February 1990, the E/SA either knew or should have known that the claimant's representations of having no prior medical condition or injuries were false. As a result of the E/SA's knowledge, the written fraudulent statements on claimant's employment application denying the existence of a prior back condition could have in no way induced the E/SA to enter into the two stipulations following claimant's deposition. Because there was no proof that the stipulations were obtained by fraud, the stipulations may not be set aside on the basis of fraud.
As to the remaining ground possibly applicable to the issue, mistake of fact, the general rule is that a party will be relieved from a stipulation entered into under a mistake as to a material fact, if there has been reasonable diligence exercised to ascertain such fact. On the other hand, if a party enters into an agreement, not as a result of a mistake of fact, but merely due to a lack of full knowledge of the facts, caused by the party's failure to exercise due diligence to ascertain them, there is no proper ground for relief. See Marrujo v. Chavez, 77 N.M. 595, 426 P.2d 199, 202-03 (1967); United Factors v. T.C. Assocs. Inc., 21 Utah 2d 351, 445 P.2d 766, 769 (1968) (quoting 83 C.J.S. Stipulations § 35(b)(2), at 91 (1953)); 73 Am.Jur.2d Stipulations § 14, at 551 (1974).
In our judgment, this case is similar to Spitzer v. Bartlett Brothers Roofing, 437 So.2d 758 (Fla. 1st DCA 1983), wherein the employer and employee stipulated that the employee was entitled to three months' catastrophic-loss benefits, notwithstanding the employer's lack of certainty concerning whether the catastrophic-loss statute, Section 440.15(2)(b), Florida Statutes (1979), legally authorized the payment of such benefits for the employee's type of injury, because of the ambiguity of the language that then existed in the statute. Despite the parties' agreement, the deputy commissioner, on his own motion, refused to approve the stipulation in that he determined that the agreement to pay such benefits was based on the parties' erroneous interpretation of section 440.15(2)(b). Although the deputy's construction of the statute was later validated by E.B. Malone Corp. v. Johnson, 425 So.2d 622 (Fla. 1st DCA 1983), this court in Spitzer nevertheless reversed the deputy's disapproval of the stipulation, observing that there was no suggestion that the stipulation had been procured by fraud, overreaching, misrepresentation, or withholding of facts by the employee, thereby rendering the stipulation void. In so deciding, we made the following salient comments:
When a party agrees to a stipulation for benefits in the face of uncertainty as to the meaning of the law, the deputy commissioner should not be permitted to reject the stipulation because he thereafter, on his own motion, decides that question of law contrary to the stipulation. The deputy's adjudication should be limited to those issues and benefits still in dispute between the parties. A contrary conclusion would defeat the salutary purpose and policy underlying and encouraging the usual binding effect of stipulations. The deputy erred in rejecting the stipulation in this case.
Spitzer, 437 So.2d at 760-61.
Similarly, in the case at bar, the record reveals only that the E/SA was uncertain at the time of its agreements regarding whether claimant's industrial injury had aggravated a preexisting condition or whether it was an entirely new injury, thereby making it unsure whether a causal connection existed between the work-related accident and the claimant's false representations. The E/SA was, however, in possession of all the remaining facts essential to establish a Martin v. Carpenter defense. It not only knew that claimant had suffered a prior, unrelated back injury, it also knew that claimant had falsely concealed this fact on her employment application. Armed with this knowledge, it nonetheless made a deliberate, tactical decision to enter into a stipulation, not once but twice, obligating itself to pay benefits for *497 indemnity, attendant care, and medical expenses, even though it was then aware there was a possible connection between claimant's prior condition and her later injury. Clearly, the E/SA could have, with the exercise of due diligence, delayed its agreements until the causal relationship was confirmed, yet it did not. Because the evidence clearly fails to disclose that the stipulations were the result of either fraud or a mistake of a material fact, the JCC was not authorized to relieve the employer from their binding effect. For a similar result, see Howard Johnsons v. Pineda, 560 So.2d 336 (Fla. 1st DCA 1990) (parties bound by stipulation regarding pay rate for nonprofessional attendant care).
As a result of our reversal of the JCC's denial of Fawaz's claims for benefits, which was based upon the Martin v. Carpenter defense,[4] we turn now to her individual claims. We agree with appellant that there is no competent, substantial evidence (CSE) to support the JCC's conclusion that appellant was not entitled to TTD or TPD for the reason that no evidence was presented that her current inability to work was causally related to her industrial injury. Although Dr. Schroeder testified that he considered many of claimant's continuing back complaints were related to her previous injury, he also said she had a musculoligamentous strain of her back caused by the December 6, 1988 industrial injury, and that, regarding her later condition, he would defer to physicians who saw her after he had stopped treating her in June 1989. Claimant's other two treating physicians, Drs. Kahanovitz and Yaszemski, each opined that claimant's industrial accident had aggravated her preexisting condition. Dr. Kahanovitz testified that claimant was still in an off-work status, and Dr. Yaszemski stated that claimant was totally disabled from all employment. Under section 440.15(5)(a), aggravation of a previous injury is compensable and not subject to apportionment until maximum medical improvement (MMI) is reached.
We also agree with the claimant that the JCC erred in failing to address her request for treatment at the Boston Pain Clinic as recommended by Dr. Kahanovitz. Appellee argues that the JCC implicitly addressed this request for authorization by denying claimant's claim for benefits "in its entirety." However, the denial "in its entirety" was based upon the misrepresentation defense, which we have herein rejected.
Regarding the claim for payment of the bills of Dr. Yaszemski and Beth Israel Hospital, the JCC denied such claims because: (1) claimant did not seek authorization until after she had obtained the treatment; and (2) sufficient medical care had already been authorized. The fact that claimant did not initially request authorization only supports denial of reimbursement until the time the E/SA was placed on notice of such treatment. Once claimant informed the E/SA by letter dated May 7, 1991 that she was seeking treatment from Dr. Yaszemski, the E/SA had a duty to authorize such treatment or offer alternative care. Ocean Manor Resort Hotel v. Garbalosa, 512 So.2d 256 (Fla. 1st DCA 1987). Moreover, sufficient medical care had not been authorized in that Dr. Kahanovitz lived in Arlington, Virginia, and treated claimant while she lived there, whereas Fawaz moved to Framingham, Massachusetts, in March 1991, where she was treated by Dr. Yaszemski. There was no CSE to support the JCC's total denial of reimbursement for past payment of Dr. Yaszemski's and the hospital's bills. We agree, however, that the JCC correctly concluded that Fawaz's treatment at Beth Israel Hospital for depression was not causally related to her industrial injury.
We also reverse the JCC's denial of claimant's request for vocational rehabilitation benefits, which was based on the reasons that (1) claimant had not yet reached MMI, and (2) there was no evidence of any physical restrictions relating to her industrial injury which prevented her from returning to her prior employment. This *498 court explained in Cenvill Communities, Inc. v. Brown, 409 So.2d 1147 (Fla. 1st DCA 1982), that Section 440.49(1)(e), Florida Statutes (1987), provides that temporary disability benefits shall be paid for the period during which an employee is receiving rehabilitation training under subsection (1)(a). Consequently, "[w]here rehabilitation is involved, the date of maximum medical improvement is artificially established by statute after the rehabilitation program has been completed." Cenvill, 409 So.2d at 1148 (emphasis added). See also Johnson v. Shelby Mut. Ins. Co., 274 So.2d 514 (Fla. 1973) (claimant, who had not yet reached MMI, was properly provided vocational rehabilitation).
Dr. Kahanovitz testified that claimant had a 25 percent permanent impairment to the body as a whole which was partly the result of her 1988 industrial injury, and that she was restricted from repetitive lifting and bending; therefore, in his opinion, she was not a candidate for any job requiring sitting or standing for prolonged periods of time. Prolonged sitting was a characteristic of Fawaz's job with the employer. Additionally, rehabilitation counselor David Bubeck testified that claimant was not employable in the open labor market in either Orlando or other areas, and that she needs employment counseling and job placement assistance. There was no testimony to the contrary.
Because we conclude that claimant is entitled to the claimed benefits discussed above, we conclude as well that she is entitled to costs and attorney's fees.
REVERSED and REMANDED for further proceedings consistent with this opinion.
ZEHMER, J., concurs.
WEBSTER, J., dissents with written opinion.
WEBSTER, Judge, dissenting.
I would affirm the denial of benefits to claimant based upon Martin Co. v. Carpenter, 132 So.2d 400 (Fla. 1961).
I agree that there is no merit to the argument that the employer and servicing agent waived their right to rely upon what has come to be known as the Martin v. Carpenter defense by entering into two stipulations regarding benefits, in June 1989 and February 1990. "There can be no waiver unless the party against whom the waiver is invoked was in possession of all the material facts." Fireman's Fund Ins. Co. v. Vogel, 195 So.2d 20, 24 (Fla. 2d DCA 1967). It is clear from the record that the employer and servicing agent neither knew (nor should have known) before they signed the stipulations that the injuries allegedly sustained by claimant as a result of the industrial accident were related in any way to claimant's prior back injury  i.e., that there was a causal relationship between the injuries allegedly sustained as a result of the industrial accident and the false representations made by claimant on her employment application. Moreover, I am of the opinion that the record supports a finding that, although the employer and servicing agent knew before they entered into the first stipulation that claimant had answered untruthfully several questions on her employment application relating to her prior medical history, the employer and servicing agent neither knew (nor should have known) before they entered into the second stipulation that claimant had, more likely than not, intentionally answered those questions untruthfully. Without such knowledge, the employer and servicing agent could not have known that they had a Martin v. Carpenter defense; and, therefore, they could not have waived that defense.
I am unable, however, to agree that the employer and servicing agent are estopped by either or both of the stipulations to rely upon the Martin v. Carpenter defense. I believe that the record supports a conclusion that both stipulations should have been set aside.
Clearly, a stipulation may be set aside when it is established that it was the result of a mistake of fact. E.g., Russell-Miller Milling Co. v. Todd, 198 F.2d 166 (5th Cir.1952); Esch v. Forster, 123 Fla. 905, *499 168 So. 229 (1936); Groover v. Groover, 383 So.2d 280 (Fla. 5th DCA 1980); Curr v. Helene Transp. Corp., 287 So.2d 695 (Fla. 3d DCA 1973). Equally clearly, a stipulation may be set aside if it is established that it was the result of inadvertence. E.g., Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968 (1902); United States v. McGregor, 529 F.2d 928 (9th Cir.1976); Hartford Fire Ins. Co. v. Redding, 47 Fla. 228, 37 So. 62 (1904); 73 Am.Jur.2d Stipulations § 14, at 550 (1974); 83 C.J.S. Stipulations § 35(3), at 92 (1953). A stipulation may also be set aside if failure to do so would result in manifest injustice. E.g., Graefenhain v. Pabst Brewing Co., 870 F.2d 1198 (7th Cir., 1989); Brinson v. Tomlinson, 264 F.2d 30 (5th Cir.), cert. denied, 361 U.S. 830, 80 S.Ct. 79, 4 L.Ed.2d 72 (1959); Sam Galloway Ford, Inc. v. Universal Underwriters Ins. Co., 793 F. Supp. 1079 (M.D.Fla. 1992); Lopez v. Dublin Co., 489 So.2d 805 (Fla. 3d DCA 1986); 73 Am.Jur.2d Stipulations § 13, at 548-49 (1974); 83 C.J.S. Stipulations § 34, at 89 (1953); 2 Fla.Jur.2d Agreed Case and Stipulations § 17, at 437-38 (1977). See also Jacobs v. Volker Stevin Constr., 609 So.2d 132, 133 (Fla. 1st DCA 1992) ("[a] [judge of compensation claims] is not required to follow a stipulation which is refuted by competent substantial evidence received at a hearing"); Woods v. Greater Naples Care Center, 406 So.2d 1172, 1173 (Fla. 1st DCA 1981) ("[a] [judge of compensation claims] should not bind himself to a stipulation if facts presented at the hearing are at variance with, and show good cause for modification of the stipulation"), review denied, 413 So.2d 876 (Fla. 1982).
In such cases, one relevant consideration is whether setting aside the stipulation will unfairly prejudice the opposing party. E.g., Carnegie Steel; McGregor; Sam Galloway Ford; Redding; United States Fire Ins. Co. v. Roberts, 541 So.2d 1297 (Fla. 1st DCA 1989). Whether to set aside a stipulation rests in the sound discretion of the trial court, and will not be reversed on appeal absent a clear abuse of that discretion. E.g., Graefenhain; Morrison v. Genuine Parts Co., 828 F.2d 708 (11th Cir.1987), cert. denied, 484 U.S. 1065, 108 S.Ct. 1025, 98 L.Ed.2d 990 (1988); 73 Am.Jur.2d Stipulations § 13, at 548-49 (1974); 83 C.J.S. Stipulations § 34, at 88-89 (1953); 2 Fla.Jur.2d Agreed Case and Stipulations § 17, at 438 (1977).
In my opinion, the record provides ample support for the refusal of the judge of compensation claims to hold that the employer and servicing agent were estopped by either stipulation to rely upon the Martin v. Carpenter defense. (In other words, there is ample support in the record for the tacit holding that the stipulations should be set aside.) In the first place, my review of the record satisfies me that the employer and servicing agent could not have learned, through the exercise of reasonable diligence, before the second stipulation had been entered into that the injuries allegedly sustained by claimant as a result of the industrial accident were related in any way to claimant's prior back injury. But see Redding, 37 So. at 69 (due diligence is not a prerequisite to setting aside a stipulation, as long as the opposing party will not be unfairly prejudiced). Dr. Lapp, an osteopathic physician who was claimant's family physician at the time of the industrial accident, testified that he saw claimant approximately ten days after the accident. He initially diagnosed traumatic sciatic neuritis. When x-rays suggested a possible compression fracture, he referred claimant to Dr. Schroeder, an orthopedic surgeon. In January 1989, Dr. Schroeder diagnosed claimant's problem as a musculoligamentous strain, a condition unrelated to claimant's previous back injury. In August 1991, Dr. Schroeder was still of the opinion that claimant had sustained a musculoligamentous strain as a result of the industrial accident, and that that injury had not aggravated claimant's preexisting back problems.
There is no evidence in the record that any physician communicated to the employer and servicing agent before the second stipulation was entered into that the industrial accident had aggravated claimant's prior back injury; or, for that matter, that any physician held such an opinion before *500 the second stipulation was executed. Accordingly, in my opinion, the record provides ample support for a finding of either mistake of fact or inadvertence on the part of the employer and servicing agent. Either would be sufficient to justify setting aside the two stipulations, in the absence of a showing that doing so would result in unfair prejudice to claimant. The judge of compensation claims expressly found that claimant would not be unfairly prejudiced, and I believe that such a finding is supported by the record.
Moreover, in my opinion, failure to set aside the two stipulations so that the employer and servicing agent might assert the Martin v. Carpenter defense would result in a manifest injustice, based upon the facts as found by the judge of compensation claims. Notwithstanding the fact that she had had two back surgeries in 1987, in 1988 claimant stated on her employment application that she had never injured her back; had never been seriously injured; had never been a patient in a hospital; and had never been operated on. The judge of compensation claims found that all of those misrepresentations were deliberate, and there is competent substantial evidence to support that finding. There is also competent substantial evidence to support the finding of the judge of compensation claims that claimant testified untruthfully when she said that she had orally informed her supervisors of her prior back problems, and when she testified regarding the severity of her injuries alleged to have arisen out of the industrial accident. Among other things, claimant testified that she was unable to walk more than a mile under the best circumstances, and that she was unable to shop by herself. However, a private detective retained by the employer and servicing agent testified that he observed claimant walking distances in excess of a mile, climbing a waist-high median on a heavily traveled highway in high-heel shoes and shopping by herself without difficulty. To paraphrase the judge of compensation claims, "[j]ustice [should] not allow the claimant to avoid a defense that she helped to conceal from the [e]mployer/[s]ervicing [a]gent."
The majority concludes that it would have been more reasonable for the employer and servicing agent to have delayed any decision as to compensability (and not entered into the stipulations) until they had completed their investigation as to whether a causal relationship existed between the injuries allegedly sustained as a result of the industrial accident and the misrepresentations made by claimant on the employment application. Again, I am unable to agree. To accept the majority's position would result in leaving the employer and servicing agent with a Hobson's choice.
According to the majority, by agreeing to pay some benefits before they could determine whether they had a viable Martin v. Carpenter defense, the employer and servicing agent precluded themselves from being able to assert that defense when the facts became known. Yet, had they controverted claimant's right to benefits until they were able to determine whether they had a viable Martin v. Carpenter defense and it turned out that the facts would not support such a defense, or that the judge of compensation claims did not accept it, the employer and carrier might well be required to pay penalties, interest and attorney fees in addition to the benefits at issue. See § 440.20, Fla. Stat. (Supp. 1988); § 440.34, Fla. Stat. (1987).
I see little justice in punishing the employer and servicing agent for promptly paying some benefits even though their obligation was not entirely clear at the time. Moreover, to do so would appear to be contrary to a principal intent behind the Workers' Compensation Law  to ensure prompt, inexpensive and non-adversarial compensation to employees who sustain injuries arising out of and in the course of their employment. E.g., Lee Eng'g & Constr. Co. v. Fellows, 209 So.2d 454 (Fla. 1968); Port Everglades Terminal Co. v. Canty, 120 So.2d 596 (Fla. 1960); Blount v. State Road Dep't, 87 So.2d 507, 512 (Fla. 1956) (on rehearing).
I am of the opinion that the employer and servicing agent are not estopped because of either of the stipulations to rely *501 upon the Martin v. Carpenter defense; that the decision of the judge of compensation claims is supported by competent substantial evidence; and that reversal will reward deceit and result in a manifest injustice. Accordingly, respectfully, I dissent.
NOTES
[1] This defense precludes an employee from receiving workers' compensation benefits if there is shown to be a causal relationship between the current injury and a false representation made by the employee concerning his or her prior condition, and if there is shown that (1) the employee knew the representation to be false, (2) the employer relied on the false representation, and (3) such reliance resulted in consequent injury to the employer. Martin Co. v. Carpenter, 132 So.2d 400, 406 (Fla. 1961).
[2] Authorization and reimbursement of Dr. Lapp was one of the matters included in the first joint stipulation.
[3] Supra, n. 1.
[4] Because the employer was bound by the stipulations, we do not reach the issue of whether section 440.15(5)(a) should be retroactively applied to this case.